IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| MMIC INSURANCE INC., <br><br> Plaintiff, <br><br> v. <br><br> OBSTETRIC AND GYNECOLOGIC ASSOCIATES OF IOWA CITY AND CORALVILLE, P.C., <br><br> Defendants. | CASE NO. <br><br><br><br> **COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** |

COMES NOW Plaintiff MMIC Insurance, Inc. ("MMIC"), by and through the undersigned counsel, and for its Complaint for Declaratory Judgment and Injunctive Relief hereby states as follows:

1.      MMIC brings this action seeking a declaration of rights and duties imposed by an insurance policy and enforcement of MMIC's rights therein by way of declaratory judgment and injunctive relief.

2.      This action arises out of MMIC's defense of Its Insured, Defendant Obstetric and Gynecologic Associates of Iowa City and Coralville, P.C., ("the Clinic"). A medical malpractice lawsuit was filed against the Clinic in November 2019. On March 22, 2022, a jury returned a verdict against the Clinic. MMIC has defended the Clinic without reservation from the inception of this lawsuit, and such defense has continued through appeal. The case is currently pending on appeal, fully briefed.

3. On or about April 27, 2023, the Clinic terminated its personal counsel and hired Attorney Nicholas Rowley as personal counsel to advise the Clinic in a purported bad faith claim against MMIC arising out of the March 2022 verdict that is currently on appeal. On June 2, 2023, Attorney Rowley informed MMIC in writing the following: "I went and found Judge Bennett and spent approximately a half hour in the room with the Plaintiffs discussing how we could work together and dismiss the appeal and move forward with an action together against MMIC/Constellation/Defense Counsel" and "I do believe that the optics of this case will be changing very soon and that after the unprecedented motions that we [the Clinic] intend to file, the chances of MMIC getting a new trial will go down to less than 10%."

4. Given these statements by Mr. Rowley on behalf of the Clinic, MMIC comes to this Court seeking an Order(s) to allow the legal process relating to matters Johnson County Case Number LACV081421 and Iowa Supreme Court Case Number 22-1317 (the "Underlying Action") to play out, including but not limited to allowing the underlying direct appeal, which is fully briefed and awaiting a merits decision, to be decided by the Iowa appellate courts.

## JURISDICTION

5. MMIC is, and at all relevant times was, a corporation incorporated under Minnesota law with its principal place of business in Minnesota.

6. Defendant Obstetric and Gynecologic Associates of Iowa City and Coralville, P.C., ("the Clinic") is a professional corporation incorporated under the laws of the State of Iowa with its principal place of business in Iowa.

7. Complete diversity exists between the parties.

8. This Complaint for Declaratory Judgment and Injunctive Relief involves a $12 million liability insurance claim deriving out of an excess judgment, the amount of which exceeds the amount-in-controversy for diversity jurisdiction. 28 U.S.C. § 1332(a)(1).

9. This Court retains personal jurisdiction over Defendant, the Clinic, because MMIC's cause of action in this matter arise from the Clinic's corporate citizenship (Iowa) and the events giving rise to this action within the Southern District of Iowa.

10. The Clinic's underlying liability was determined by jury verdict in the Iowa District Court for Johnson County; the acts and omissions relevant to the judgment and potential insurance claim occurred in Johnson County, Iowa; and the Clinic is a professional corporation located in the Southern District of Iowa, Eastern Division.

11. Venue is proper in this District.

12. Actual, justiciable controversies exist between MMIC and the Clinic, and litigation as to these controversies is imminent and inevitable. The resolution of the matters raised in this Complaint will dispose of the issues and disputes between the parties.

13. MMIC has no adequate remedy at law.

14. MMIC brings its claims for declaratory judgment and injunctive relief pursuant to the procedural Declaratory Judgment Act (28 U.S.C. § 2201(a)), permitting federal courts to issue declaratory orders in circumstances like these, and by the general legal and equitable role of this Court, which empower the Court to grant the requested relief.

## COMMON FACTS

15. The Clinic maintained a medical professional liability insurance claims-made and reported policy ("the Policy") with MMIC from January 1, 2019 – January 1, 2020.

## Underlying Lawsuit

16. On November 22, 2019, S.K., a minor, filed suit against the Clinic and one of its shareholders, Dr. Goodman, alleging medical malpractice in S.K.'s birth from 2018.

17. In March 2022, jury trial was held in the Iowa District Court of Johnson County.

18. The jury returned a verdict in excess of the Clinic's policy limits.

19. The Clinic directly appealed the verdict, judgment, and other adverse rulings embraced therein to the Iowa Supreme Court ("direct appeal").

20. The Clinic's direct appeal remains pending before the Iowa appellate courts and is fully submitted pursuant to the briefing schedule.

## Supersedeas Bond

21. On August 19, 2022, the Clinic moved the Iowa Supreme Court for an order staying execution of the Johnson County judgment without satisfying a supersedeas bond.

22. On October 4, 2022, the Iowa Supreme Court denied the Motion to Stay.

23. Following the Iowa Supreme Court's denial of the motion to stay, judgment creditor and underlying Plaintiff S.K. attempted to execute on the Clinic.

## Clinic's Bankruptcy Filings

24. On October 31, 2022, the Clinic voluntarily initiated bankruptcy proceedings in the United States Bankruptcy Court for the Southern District of Iowa ("Bankruptcy Court").

25. In a Bankruptcy Rule 2004 examination conducted in the bankruptcy proceeding, Clinic Principal Dr. Jill Goodman testified that MMIC had no involvement in the Clinic's decision to file for bankruptcy.

26. On November 20, 2022, the Clinic moved the Bankruptcy Court for an order (1) enforcing bankruptcy's automatic stay provision; (2) for contempt against creditor and their counsel; and (3) related relief.

27. On November 29, 2022, the Bankruptcy Court denied the November 20 Motion.

28. On December 6 and 16, 2022, MMIC and the Clinic appealed the Court's November 29th Order, respectively. These appeals were consolidated for briefing purposes ("interlocutory bankruptcy appeal").

29. On January 20, 2023, judgment creditor, and underlying litigation Plaintiff S.K. filed a Motion to Dismiss the entire bankruptcy action before the Bankruptcy Court.

30. On April 3, 2023, the Bankruptcy Court granted the Motion to Dismiss.

31. On April 4, 2023, the Clinic appealed the Bankruptcy Court's dismissal to the United States District Court for the Southern District of Iowa ("bankruptcy dismissal appeal").

32. On April 19, 2023, the Clinic terminated its prior counsel and retained new privately retained counsel, Nicholas Rowley. The Clinic also terminated its bankruptcy counsel.

33. On April 28, 2023, the Clinic moved to voluntarily dismiss the interlocutory bankruptcy appeal and the bankruptcy dismissal appeal.

## Automatic Stay

34. Attendant any initiation of bankruptcy proceedings is an automatic stay. *See* 11 U.S.C. § 362(a); *Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020).

35. MMIC determined it would be violative of the automatic stay to issue payments to a bankruptcy debtor during the pendency of bankruptcy proceedings, and determined it should not pretermit the distribution of assets of the bankruptcy estate.

### Underlying Plaintiff's Counsel's Repudiation of Lawful Obligations

36. Counsel for underlying Plaintiff at multiple times represented to MMIC and its counsel that were the appeal to be successful, underlying Plaintiff would *not* remit any policy proceeds back to MMIC.

### MMIC's Issuance of Policy Proceeds

37. In September 2022, MMIC offered to pay its policy proceeds, totaling $12,000,000, directly into underlying Plaintiff's counsel's trust account, contingent on the funds being returned to MMIC should the Clinic succeed in the direct appeal.

38. Counsel for underlying Plaintiff refused the proposal and again rejected the notion that the $12,000,000 policy proceeds would be returned to MMIC should the Clinic succeed in the direct appeal.

39. Indeed, counsel for underlying Plaintiff explicitly advised that he had no intention of returning the $12,000,000 policy proceeds following the Clinic's success on the direct appeal.

40. In March 2023, MMIC agreed to pay $12,000,000 policy proceeds to Plaintiff. MMIC also engaged in other efforts to prevent underlying Plaintiff from attempting to execute judgment on the Clinic, including attending a mediation to attempt to settle the underlying Plaintiff's claim within sixty (60) days, and offering to pay over and above the policy limits to prevent execution against the Clinic.

41. On April 7, 2023, after the Bankruptcy Court dismissed the bankruptcy action (but before the interlocutory bankruptcy appeal and the bankruptcy dismissal appeal were voluntarily dismissed), MMIC issued the policy proceeds to underlying Plaintiff, for $12,000,000.

## RELEVANT POLICY PROVISIONS

42. The Policy contains a provision limiting legal action against MMIC:

> I. LIMITATION OF LEGAL ACTION
> No legal action may be brought against us unless there has been full compliance by the *insured* with all of the terms and conditions of this policy. We cannot be named in any legal action unless and until the *damages* the *insured* is legally required to pay have been determined by a judgment following an actual trial or by written agreement among the claimant, the *insured* and us.

43. The Policy contains a provision imposing on the insured (i.e., the Clinic and Dr. Goodman) affirmative obligations in the handling of a liability claim:

> M. THE INSURED'S OBLIGATIONS
> 1. The *insured* must fully cooperate with us in the investigation of *claims*, the negotiation of settlements, and the conduct of litigation. The *insured* is obligated to attend hearings and trials and assist in the presentation of evidence. The *insured* must also cooperate with us in pursuing any right of contribution or subrogation against a person or organization that is or may be liable to the *insured*. The *insured* will make any assignment necessary to assist in enforcing any right to contribution or subrogation.
> 2. The *insured* must not, except at the *insured's* own expense, make any payment, admit any liability or incur any obligation other than reasonable medical expenses.

44. The Policy contains a provision expressly reserving the right to control the defense, hire counsel, and direct the defense of any claim made against the Clinic (Section ONE (C)):

> C. We have the right to control the defense of and retain an attorney to defend any *claim* covered by this insurance. We have the right to settle any *claim* subject only to the *policyholder's* right to consent as described in SECTION TEN - CONDITIONS.

## COUNT I – DECLARATORY RELIEF

45. MMIC incorporates by reference Paragraphs 1–44 as if fully repleaded herein.

46. Since the retention of new counsel (Rowley), the Clinic has threatened to voluntarily dismiss or otherwise materially impair matters it had previously filed and supported. *See e.g.*, Exhibit A. Specifically, Attorney Rowley, on June 2, 2023, alleged "I went and found Judge Bennett and spent approximately a half hour in the room with the Plaintiffs discussing how we could work together and dismiss the appeal and move forward with an action together against MMIC/Constellation/Defense Counsel" and "I do believe that the optics of this case will be

7

changing very soon and that after the unprecedented motions that we [the Clinic] intend to file, the chances of MMIC getting a new trial will go down to less than 10%."

47. Rowley's conduct is in violation of the Policy provision reserving the right to hire counsel in the sole discretion of MMIC.

48. Further, on information and belief, MMIC has learned there have been discussion(s) between underlying Plaintiff (S.K.) and the Clinic about dismissing the direct appeal as consideration for S.K. declining to execute against the Clinic.

49. Dismissing the direct appeal would violate the Clinic's obligation to permit MMIC to control the defense of the claim.

50. Dismissing the direct appeal would violate the Clinic's obligation to refrain from, except at its own expense, admitting liability or incurring any obligation to the claimant.

51. MMIC does not wish to dismiss the appeal and would like to see it reach its lawful conclusion.

52. MMIC controls the defense of the claim, including through appeal.

53. Dismissal of the pending direct appeal would be irreversible.

54. Dismissal of the pending direct appeal against the wishes of MMIC, or any other interference with the opportunity or nature of the Iowa Supreme Court's decision on the merits would not be compliant with the terms and conditions of the Policy.

55. The failure to comply with the terms of the Policy vitiates any suit brought against MMIC, to include declaratory judgment, breach of contract, or any bad faith claim.

56. Attorney Rowley's stated agenda is to eliminate or otherwise impair the appeal. MMIC resists that agenda. MMIC comes to this Court in an effort to ensure the legal process is

able to play out. MMIC asks this Court for relief only insofar as it would allow an unimpeded legal process to play out.

57. MMIC requests an order declaring that dismissal of the direct appeal, or any other interference with the opportunity or nature of the Iowa Supreme Court's decision on the merits, would violate the terms of the Policy, would foreclose the filing of a bad faith cause of action (or any other claim) against MMIC, and would also void the Policy *ab initio*.

## COUNT II – INJUNCTIVE RELIEF

58. MMIC incorporates by reference Paragraphs 1–57 as if fully repleaded herein.

59. MMIC has a right under the Policy to control the defense of any claim made against the CIinic, including the direct appeal.

60. MMIC does not wish to dismiss the direct appeal.

61. Attorney Rowley's stated agenda is to eliminate or otherwise impair the appeal. MMIC resists that agenda. MMIC comes to this Court in an effort to ensure the legal process is able to play out. MMIC asks this Court for relief only insofar as it would allow an unimpeded legal process to play out.

62. Dismissing the direct appeal, or any other interference with the opportunity or nature of the Iowa Supreme Court's decision on the merits, will invade MMIC's right to control the defense of the direct appeal.

63. MMIC requests an order enjoining the Clinic from dismissing the direct appeal, or otherwise interfering with the opportunity or nature of the Iowa Supreme Court's decision on the merits, absent MMIC's approval, and for such other appropriate injunctive relief.

64. Absent injunctive relief, MMIC will suffer irreparable injury for which there is no adequate remedy at law, including but not limited to the dismissal of a fully briefed and rightful appeal which, if successful, would mandate the return of the $12 million proceeds paid by MMIC to Plaintiff (S.K.).

**COUNT III – PRELIMINARY INJUNCTION (EXPEDITED RELIEF REQUESTED)**

65. MMIC incorporates by reference Paragraphs 1–64 as if fully repleaded herein.

66. MMIC is likely to prevail on the merits of its permanent injunctive relief (Count II).

67. If the Clinic were to dismiss the pending direct appeal (or otherwise impede the full and fair resolution of the direct appeal by the Iowa appellate courts) before this Court had opportunity to resolve Counts I and II in this Complaint, injury to MMIC would be irreparable.

68. The injury to MMIC outweighs any interest the Clinic may seek against MMIC by dismissing the direct appeal and/or otherwise impeding the same.

69. MMIC respectfully requests expedited relief and a preliminary injunction until Counts I and II of this Complaint may be fully resolved.

WHEREFORE, MMIC respectfully requests this Court enter judgment as follows:

A. Declare the rights of the parties, including interpreting the terms and conditions of the aforementioned Policy and enter judgment declaring the following:

    i. Dismissal of the direct appeal, as defined herein, or any other interference with the opportunity or nature of the Iowa Supreme Court's decision on the merits, would violate the terms of the Policy;

    ii. Dismissal of the direct appeal, as defined herein, or any other interference with the opportunity or nature of the Iowa Supreme Court's decision on the merits,

would not constitute compliance with the Policy's terms and obligations, and would foreclose any legal action against MMIC; and

iii. Dismissal of the direct appeal, as defined herein, or any other interference with the opportunity or nature of the Iowa Supreme Court's decision on the merits, would void the Policy *ab initio*.

B. Enjoin the Clinic from dismissing the direct appeal, as defined herein, or otherwise interfering with the opportunity or nature of the Iowa Supreme Court's decision on the merits, absent MMIC's approval.

C. Preliminarily enjoin the Clinic from dismissing the direct appeal, as defined herein, or otherwise interfering with the opportunity or nature of the Iowa Supreme Court's decision on the merits, absent MMIC's approval, until Counts I–II, and relief A–B as requested herein, can be fully adjudicated.

Respectfully submitted,

ZENOR KUEHNER, PLC

By: /s/ *Adam D. Zenor*
   Adam D. Zenor, AT0009698

By: /s/ *Derek R. LaBrie*
   Derek R. LaBrie, AT0014157

111 East Grand Avenue, Suite 400
Des Moines, IA  50309
Phone:  515/650-9005
Fax:  515/206-2654
adam@zenorkuehner.com
derek@zenorkuehner.com

MEISSNER TIERNEY FISHER & NICHOLS, S.C.

By: /s/ *Mark D. Malloy*
   Mark D. Malloy
   *Pro Hac Vice Forthcoming*

111 East Kilbourn Avenue, 19th Floor
Milwaukee, Wisconsin 53202
Phone:  414/273-1300
Fax:  414/273-5840
mdm@mtfn.com

ATTORNEYS FOR MMIC INSURANCE, INC.