IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| MMIC INSURANCE, INC.<br><br>　　　Plaintiff,<br><br>v.<br><br>OBSTETRIC AND GYNECOLOGIC ASSOCIATES OF IOWA CITY AND CORALVILLE, P.C.,<br><br>　　　Defendant. | Civil Action No.: 3:23-CV-00039<br><br><br>**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES** |

Defendant Obstetric and Gynecologic Associates of Iowa City and Coralville, P.C. ("The Clinic"), by and through the undersigned counsel, and for its Answer to Plaintiff's Complaint for Declaratory Judgment and Injunctive Relief states as follows:

1.　Paragraph 1 is simply an introductory statement and does not warrant an admission or denial.

2.　Defendant admits paragraph 2 to the extent that a medical malpractice suit (underlying suit) was filed against The Clinic, Dr. Goodman, and Mercy Hospital. Dr. Goodman was dismissed before a jury returned a verdict that exceeded $97 million in favor of S.K., who was found to have suffered over $50 million in economic damages and a slightly lesser amount in noneconomic damages. The Plaintiff, MMIC, is an insurance company domiciled at the same location as Constellation, Inc. and is a wholly owned subsidiary of the said corporation. While MMIC asserts that it insured The Clinic and its doctors, the Defendant is uncertain about the veracity of this claim and whether Constellation, Inc. either insures The Clinic or exercises control over MMIC, not only in the handling of claims related to the underlying suit but also in other significant ways.

1

Constellation, Inc., formerly MMIC Group, Inc., underwent a reorganization in 2011 and was renamed MMIC Group Mutual Insurance Holding Company. The primary business of MMIC Group Mutual Insurance Holding Company (which was renamed Constellation, Inc. in 2015) was to provide professional liability insurance for physicians, hospitals, and other healthcare professionals. According to its articles of incorporation, Constellation, Inc. "shall at all times own, directly or through one or more intermediate holding companies, voting shares of the capital stock of MMIC Insurance, Inc., or its successors representing a majority of the voting power of MMIC Insurance, Inc. or its successors." For this response, Defendant will refer to MMIC as MMIC/Constellation.

Defendant concurs that MMIC/Constellation did not defend the underlying case under a reservation of rights but disagrees that the defense was in The Clinic or its doctors' best interest. Instead, MMIC/Constellation repeatedly and materially put its financial and political interests ahead of its insureds - The Clinic and the individually named doctors of The Clinic. It is Defendant's position that MMIC/Constellation controlled the defense of the underlying claim in bad faith and breached the insurance contract, as will be detailed herein. As further explained, MMIC/Constellation's bad faith defense constitutes a breach of the insurance contract. Defendant acknowledges that the case is currently pending an appeal. Defendant further contends that MMIC/Constellation unreasonably refused to settle and protect Defendant and its physicians and refused to pay anything within the policy limits to settle this case, and once a jury returned a verdict for $97 million, MMIC used that result to convince Iowa politicians to put a cap on noneconomic damages in place in the State of Iowa. MMIC/Constellation unreasonably chose not to settle and make the lawsuit and verdict go away and then used The Clinic's financial

and reputational demise as propaganda to get tort reform passed in Iowa. Defendant otherwise denies the allegations set forth herein.

3. Defendant denies paragraph 3. MMIC/Constellation should be sanctioned, and this Complaint should be dismissed as it is based upon improper inadmissible confidential communications taking place in the context of mediation and settlement discussions in which the entire purpose was to explore the potential for common ground and compromise. These communications were written in response to MMIC/Constellations' assertion that such exchanges are confidential, as stipulated by Iowa Code § 679C.104 and Rule 408, Iowa R.Evid. MMIC/Constellation is fully aware that this communication should not have been publicly disclosed or utilized in a public proceeding. Furthermore, the document provides an incomplete account of the discussions and events that transpired during the mediation, in the lead-up, and the exchanges between the parties which continued following the in-person mediation. Mediation and negotiations were continued through retired Judge Mark Bennett. Using confidential, privileged communication to justify filing a federal lawsuit was and is the wrong thing to do here. Moreover, additional facts must be disclosed to contextualize these improperly disclosed statements. For instance, despite having discussions with Plaintiff's counsel in the underlying litigation concerning potential ways of reaching a settlement – which was the very purpose of the Mediation -- Defendants here did not agree to dismiss the appeal and, under presently existing circumstances, have no intention of doing so. That being the case, this action for declaratory relief lacks a justiciable controversy.

4. Paragraph 4 is simply an editorial statement of Plaintiff's supposed purpose and does not warrant an admission or denial. To the extent a response is required, Defendant denies.

## JURISDICTION

5. Defendant admits paragraph 5.

6. Defendant admits paragraph 6.

7. Defendant admits paragraph 7.

8. Defendant admits paragraph 8.

9. Defendant admits paragraph 9.

10. Defendant admits paragraph 10.

11. Defendant admits paragraph 11.

12. Defendant denies paragraph 12. At this point in time, The Clinic does not intend to dismiss the appeal, which negates any actual justiciable controversy. If and when The Clinic decides to pursue a course of dismissing the Appeal, MMIC/Constellation will be duly notified of this change in position before any such action takes place, giving it time to pursue the relief it seeks here. Wherefore, this lawsuit should be dismissed so that the Court's time and resources are not wasted.

13. Defendant denies paragraph 13.

14. Defendant denies paragraph 14, as the Declaratory Judgment Act does not permit federal courts to issue declaratory orders where there is no justiciable controversy, and as a result, this Court has no subject matter jurisdiction here.

## COMMON FACTS

15. Defendant admits paragraph 15 to the extent described in paragraph 2 above. Otherwise, Defendant denies.

## Underlying Lawsuit

16. Defendant admits paragraph 16 to the extent that S.K. did file a suit against Dr. Goodman, The Clinic, and Mercy Hospital, Iowa City, Iowa (hereafter, Mercy Hospital),

asserting claims of negligence resulting in brain damage. Defendant denies unless otherwise admitted herein.

17.     Defendant admits paragraph 17 to the extent that it acknowledges a trial was held in Johnson County.

18.     Defendant admits paragraph 18 to the extent that it acknowledges the jury's determination that S.K. did suffer brain damage because of negligence. The jury determined that S.K. sustained $97,402,549 in damages. Specifically, the jury assessed $42,203,818 as necessary for S.K.'s future medical care and related expenses. Moreover, they determined that S.K.'s future wage loss to be $11,698,731. The jury also awarded $2,100,000 for past noneconomic damages and $41,400,000 for future noneconomic damages.

19.     Defendant admits paragraph 19 to the extent that an appeal was filed but affirmatively alleges that MMIC/Constellation controlled all decisions related to this matter. As will be explained later, this included but was not limited to MMIC/Constellation's absolute refusal to negotiate with the underlying plaintiff before trial, repeatedly putting its financial and political interests (MMIC/Constellation's tort reform efforts in Iowa to get a noneconomic damages cap put in place) ahead of its insureds, and numerous promises, including the promise that it would post a bond, yet it ultimately broke that promise. Facts relating to this issue will be explained in more detail below. Defendant denies the rest of this paragraph unless otherwise admitted herein.

20.      Defendant admits paragraph 20.

## **Supersedeas Bond**

21.     Defendant admits paragraph 21 to the extent that a bond was not filed, even though MMIC agreed to do so and then reneged on that agreement. As explained, there are substantially more facts and broken promises by MMIC/Constellation than alleged herein regarding the bond.

The bad faith runs deep and will prove to be one of the worst cases of bad faith conduct justifying punitive damages by an insurer in Iowa State history. Defendant denies this paragraph unless otherwise admitted herein.

22. Defendant admits paragraph 22.

23. Defendant admits paragraph 23 to the extent that after MMIC reneged on its agreement to post a bond, the Iowa Supreme Court denied a stay based on that failure to post a bond, and the underlying Plaintiff then moved to execute on The Clinic's assets. Based on information and belief, MMIC/Constellation's bond promise was directly related to its malicious bad faith adjusting and breach of the insurance contract leading up to the trial.

      Before the underlying trial, S.K. repeatedly requested that MMIC/Constellation attempt to resolve this matter within policy limits. In addition, Mercy Hospital, The Clinic, and The Clinic's doctors likewise repeatedly requested that MMIC/Constellation attempt to resolve this matter within the policy limits. Despite these clear and unequivocal requests, MMIC/Constellation repeatedly refused to negotiate or offer anything to resolve the underlying claim before trial despite the clear possibility of a liability finding and the substantial damages resulting from the claim of malpractice.

### Clinic's Bankruptcy Filings

24. Defendant denies s paragraph 24 to the extent that it says The Clinic "voluntarily" filed for bankruptcy on October 31, 2022. This was exactly what MMIC/Constellation forced The Clinic to do. The Clinic was given no choice and takes issue with how the term "voluntary" might be used and understood in this case. MMIC/Constellation forced The Clinic to file bankruptcy because MMIC/Constellation refused to post a bond even though they had previously promised they would do so if the attempts to obtain a stay were not successful. Further, despite

requests for a bond or, at a minimum, a letter assuring The Clinic that MMIC/Constellation would stand behind any excess verdict over policy limits (comfort letter), MMIC/Constellation continued to utilize the "cooperation clause" as a bazooka shoved in The Clinic's mouth regarding the appeal. The Clinic had no choice but to "voluntarily" file for bankruptcy. MMIC/Constellation orchestrated the bankruptcy as part of a plan to avoid having to either post a bond or provide a comfort letter. MMIC/Constellation found and hired, and paid the bankruptcy lawyers. MMIC/Constellation put its financial interests ahead of The Clinic and its insured doctors because, based on information and belief, it had a deceitful and fraudulent scheme/plan. MMIC/Constellation's strategy was calculated to protect MMIC/Constellation's financial interests over those of The Clinic and its insured doctors. MMIC/Constellation's strategy was that after the bankruptcy was filed, it would buy the bad faith claim from the bankruptcy trustee enough to cover The Clinic's bankruptcy-associated expenses. This would protect MMIC/Constellation regarding the excess verdict but leave The Clinic, its doctors, and S.K. with little or nothing.

**MMIC/Constellation's plan was almost successful. It was only days away from entering into an agreement to this effect when the bankruptcy judge stepped in and dismissed the bankruptcy as fraudulent. See the Bankruptcy Judge's Order attached hereto as "Exhibit A."**

While executing this plan, MMIC/Constellation was simultaneously holding seminars and lobbying for the implementation of noneconomic caps in Iowa and involving the governor in the process.

MMIC/Constellation's propaganda and narrative selectively omitted critical details, focusing on the claim that the $97 million verdict had led to the closure of an Iowa obstetrical

clinic, causing doctors to leave the state, despite the lack of evidence supporting the claim of doctors leaving Iowa. Importantly, it failed to mention that the jury had determined S.K.'s economic damages to exceed $50 million or that the district court had halved S.K.'s noneconomic damages. Furthermore, it did not disclose that MMIC/Constellation had refused to negotiate in good faith with S.K. or offer even a penny to settle the case. It also omitted that The Clinic, Mercy Hospital, and the doctors were pleading with MMIC/Constellation to settle, yet it offered no protection to The Clinic or the doctors. Instead, it orchestrated the bankruptcy, hired and paid the bankruptcy lawyers, and refused to shield The Clinic or its insured doctors from financial ruin.

Dr. Goodman and her partners were all insured by MMIC/Constellation. MMIC/Constellation knew its actions would financially ruin The Clinic and the doctors' business where they had worked their entire careers. Instead, MMIC/Constellation planned to use The Clinic as its pawn to change Iowa law regarding noneconomic damages – telling Iowans, at best, half-truths and, at worst, straight-up lies.

MMIC/Constellation knew that when they used this dishonest strategy to limit noneconomic damages, this was primarily helping MMIC/Constellation and injuring the small percentage of malpractice patients who had suffered catastrophic damages. MMIC/Constellation also knew that when a patient is catastrophically injured by malpractice and devastating noneconomic damages significantly exceed $1 million, injured Iowans agree to settle these cases within the available policy limits. MMIC/Constellation tracks and document this data. Only catastrophically injured Iowans are left to bear the burden, while MMIC/Constellation's upper management enjoys the spoils, and they use verdicts to scare doctors into paying the highest premium they can extort out of them while boasting about its growing "billions" in net worth.

25.     Defendant admits paragraph 25 to the extent that MMIC/Constellation refused to engage in reasonable efforts to settle the claim and protect the policyholder, leaving Dr. Goodman with no choice but to pursue bankruptcy and deny that it was filed for an improper purpose. Had Dr. Goodman said anything different, MMIC/Constellation would argue that she had violated the cooperation clause. MMIC/Constellation continues to utilize the cooperation clause and other clauses in this Complaint, stating that unless The Clinic and its doctors comply with the orchestrated defense, The Clinic and doctors will be left without coverage and financially at risk. This is why it is that Defendant, The Clinic, and the doctors wish to negotiate a resolution with S.K. and his lawyers. A new trial does nothing to serve the interests of this answering party or its interested physicians, especially with MMIC/Constellation calling all the shots. MMIC/Constellation's shots only serve their own interests and constitute bad faith, and are detrimental to the interests of this insured Defendant and its physicians. To the extent not admitted herein, Defendant denies the remainder of paragraph 25.

26.     Defendant admits paragraph 26.

27.     Defendant admits paragraph 27.

28.     Defendant admits paragraph 28.

29.     Defendant admits paragraph 29.

30.     Defendant admits paragraph 30.

31.     Defendant admits paragraph 31 to the extent that MMIC/Constellation continued to orchestrate the bankruptcy.

32.     Defendant denies paragraph 32 to the extent that The Clinic did not terminate its bankruptcy counsel.

33. Defendant admits paragraph 33 to the extent that after the court dismissed the bankruptcy filing as fraudulent, and the bankruptcy lawyers hired by MMIC/Constellation were billing hundreds of thousands of dollars, The Clinic dismissed the bankruptcy appeal.

Moreover, even though MMIC/Constellation had agreed to cover the expenses associated with The Clinic's personal counsel and the bankruptcy, it has also broken these promises. As a result, the bankruptcy lawyers and personnel are asserting liens against The Clinic for payment and withholding their litigation files, leaving The Clinic without any means of determining what transpired between the bankruptcy attorneys and personnel and MMIC/Constellation. A clear conflict of interest exists.

In summary, the bankruptcy court correctly dismissed the bankruptcy as fraudulent. The bankruptcy was not aiding The Clinic and was on its way to racking up bills over $1 million, causing this answering party and its physicians further harm. Only MMIC/Constellation stood to benefit from the bankruptcy – not The Clinic, its physicians, nor S.K.

### Automatic Stay

34. Defendant denies paragraph 34 in that the bankruptcy court determined the bankruptcy was fraudulent and automatic stays are not allowed in a fraudulent bankruptcy.

35. Defendant denies paragraph 35.

### Underlying Plaintiff's Counsel's Repudiation of Lawful Obligations

36. Defendant denies paragraph 36.

### MMIC's Insurance of Policy Proceeds

37. Defendant is without sufficient information to admit or deny paragraph 37, as The Clinic does not have a copy of MMIC/Constellations claim file.

38. Defendant is without sufficient information to admit or deny paragraph 38, as The Clinic does not have a copy of MMIC/Constellations claim file.

39. Defendant is without sufficient information to admit or deny paragraph 39, as The Clinic does not have a copy of MMIC/Constellations claim file.

40. Defendant admits MMIC/Constellation paid $12 million. Defendant denies the remainder.

41. Defendant admits paragraph 41 in that after the bankruptcy court ruled the bankruptcy as fraudulent, MMIC/Constellation finally paid the $12 million.

## RELEVANT POLICY PROVISIONS

42. Defendant admits the policy language cited in paragraph 42 is contained in the insurance policy at issue.

43. Defendant admits the policy language cited in paragraph 43 is contained in the insurance policy at issue.

44. Defendant admits the policy language cited in paragraph 44 is contained in the insurance policy at issue.

## COUNT I – DECLARATORY RELIEF

45. Defendant hereby adopts and incorporates its answers to paragraphs as set forth herein.

46. Defendant denies paragraph 46 as set forth herein. The Clinic has not "threatened" to dismiss the appeal, and as MMIC/Constellation is well aware, the document they refer to is part of discussions at mediation during settlement negotiations and are confidential communications related to efforts to find compromise and resolve the matter by settlement. Not only are communications made in response to settlement confidential as outlined in Iowa Code § 679C.104 and Rule 408, Iowa R.Evid, MMIC/Constellation is misstating what was said. The

mediation and negotiations were continuing. Judge Bennett was still involved and was provided a copy of the communication. MMIC/Constellation is fully aware that any such communication should not have been publicly disclosed or utilized in a public proceeding. Furthermore, any such communications should not be taken out of context. This reference is an incomplete account of the discussions and events that transpired during the mediation process, in the lead-up to the mediation, and in the exchanges between the parties following the in-person first day of mediation.

47. Defendant denies paragraph 47 as set forth herein. As MMIC/Constellation is well aware, like the document they attached, any other reference to settlement negotiations comprises confidential communications related to the mediation of this matter. Not only are communications made in response to settlement confidential as outlined in Iowa Code § 679C.104 and Rule 408, Iowa R.Evid, MMIC/Constellation is misstating what was said. MMIC/Constellation is fully aware that any such communication should not have been publicly disclosed or utilized in a public proceeding. Furthermore, any such communications should not be taken out of context. This reference is an incomplete account of the discussions and events that transpired during the mediation, in the lead-up to the mediation, and in the exchanges between the parties following the first day of in-person mediation.

48. Defendant denies paragraph 48 as set forth herein. As MMIC/Constellation is well aware, like the document they attached, any other reference to settlement negotiations comprises confidential communications related to the mediation of this matter. Not only are communications made in response to settlement confidential as outlined in Iowa Code § 679C.104 and Rule 408, Iowa R.Evid, MMIC/Constellation is misstating what was said. MMIC/Constellation is fully aware that any such communication should not have been publicly

disclosed or utilized in a public proceeding. Furthermore, any such communications should not be taken out of context. This reference is an incomplete account of the discussions and events that transpired during the mediation, in the lead-up to the mediation, and in the exchanges between the parties following the first day of mediation.

49.     Defendant denies paragraph 49 as set forth herein. MMIC/Constellation has already breached the insurance contract by unreasonably refusing to make any efforts to settle within policy limits, which excuses and voids any responsibility of Defendants to comply with the cooperation clause or the provision allowing MMIC/Constellation to control the defense. Further, as MMIC/Constellation is well aware, any reference to settlement negotiations comprises confidential communications related to the mediation of this matter. Not only are communications made in response to settlement discussions confidential as outlined in Iowa Code § 679C.104 and Rule 408, Iowa R.Evid, MMIC/Constellation is misstating what was said. MMIC/Constellation is fully aware that any such communication should not have been publicly disclosed or utilized in a public proceeding. Furthermore, any such communications should not be taken out of context. This reference is an incomplete account of the discussions and events that transpired during the mediation, in the lead-up to the mediation, and in the exchanges between the parties following the first day of mediation.

50.     Defendant denies paragraph 50 as stated herein. MMIC/Constellation has already breached the insurance contract by unreasonably refusing to make any efforts to settle within policy limits, which excuses and voids any responsibility of Defendants to comply with the cooperation clause or the provision allowing MMIC/Constellation to control the defense or preventing Defendants from admitting liability.

As MMIC/Constellation knows or should know, the fundamental rule of contract law is that each party is entitled to assurance that they will not be called upon to perform their remaining duties if there has already been an uncured material failure of performance by the other party, as stated in the Restatement of Contracts, 2d. Iowa has adopted this basic contractual principle: once one party to a contract materially breaches the agreement, the other party is no longer obligated to continue performing their contractual obligations. See *Kelly v. Iowa Mut. Ins. Co.*, 620 N.W.2d 637, 641 (Iowa 2000) (quoting 1 Windt § 3.10, at 139).

While The Clinic is not planning on dismissing the appeal at this present time, The Clinic wants to have the freedom to explore settlement and put an end to the risk and uncertainty hanging over The Clinic and its physicians' heads. Wherefore, it is requested that this answering party and its physicians be allowed to negotiate with S.K. and his lawyers. MMIC/Constellation has broken promises, committed fraud and deceit, and used its insureds to burn in a fire of misfortune to the tune of a $97 million verdict followed by a fraudulent bankruptcy in order to get tort reform passed in Iowa. This answering party and its interested physicians want to sue MMIC/Constellation for bad faith and expose what happened, but right now, MMIC/Constellation is holding its insureds hostage and is asking this Court to exercise its power to keep the doors to justice shut. Defendant will give MMIC/Constellation advance notice before dismissing the civil appeal in Iowa.

If MMIC/Constellation is confident that the appeal will succeed and will promise to indemnify The Clinic and its physicians and pay whatever the verdict or judgment ends up being, then this answering party has no problem with MMIC/Constellation rolling the dice and the chips can fall wherever they may. The Clinic and its insured doctors can work out and prosecute the bad faith claim after the appeal is completed assuming MMIC/Constellation agrees to waive any

statutes of limitation associated with The Clinic and the insured doctors' bad faith and fraud claims and any and all associated claims against MMIC/Constellation and any of its agents. Continuing to refuse to negotiate assumes the appeal will definitely be reversed. First, that is not guaranteed. If the appeal is not reversed, like MMIC/Constellation's refusal to negotiate before the first trial, another opportunity to negotiate will be lost. Second, even if the appeal is successful, that would leave The Clinic faced with another trial and another substantial verdict – one that might even be larger, which puts The Clinic and its physicians in a worse position if MMIC/Constellation continues to behave they way they have up to this point in time. Again, MMIC/Constellation is only considering its financial interests, not that of its insureds.

51.   Defendant admits paragraph 51.

52.   Defendant admits paragraph 52.

53.   Defendant admits paragraph 53.

54.   Defendant denies paragraph 54.

55.   Defendant denies paragraph 55. MMIC/Constellation has already violated the contract by breaching its duty to engage in reasonable settlement discussions and make efforts to settle within policy limits, which voids Defendants' responsibility to continue meeting the cooperation clause or other conditions of the policy.

56.   Defendant denies paragraph 56.

57.   Defendant denies paragraph 57.

## COUNT II – INJUNCTIVE RELIEF

58.   Defendant hereby adopts and incorporates its answers to paragraphs 1 – 57 above as if fully set forth herein.

59. Defendant denies paragraph 59. MMIC/Constellation has breached the insurance contract. As a result, they no longer have this right.

60. Defendant admits paragraph 60.

61. Defendant denies paragraph 61.

62. Defendant denies paragraph 62 as stated herein. Because MMIC/Constellation has breached the contract, it has lost the "right to control the defense" of this case. Insurance companies who breach a contract can't continue to hold their insureds hostage.

63. Defendant denies paragraph 63 as stated herein. Given that MMIC/Constellation has breached the insurance contract, Defendant should be allowed to explore settlement with S.K. and proceed with its fraud, bad faith, and other claims against MMIC/Constellation and its agents. However, The Clinic has no current agreement or plan to dismiss the appeal and will provide MMIC/Constellation advance notice in the event this changes.

64. Defendant denies paragraph 64, as stated herein.

**COUNT III – PRELIMINARY INJUNCTION (EXPEDITED RELIEF REQUESTED)**

65. Defendant hereby adopts and incorporates its answers to paragraphs 1 – 64 above as if fully set forth herein.

66. Defendant denies paragraph 66.

67. Defendant denies paragraph 67.

68. Defendant denies paragraph 68 as stated herein.

69. Denied. Defendant opposes the request for an injunction.

WHEREFORE, Defendant prays that Plaintiff's Complaint for Declaratory Judgment and Injunctive Relief be denied and dismissed and that Defendant be granted all other such relief as is appropriate and equitable under the circumstances.

**AFFIRMATIVE DEFENSES**

1.     Plaintiff's Complaint fails to state a claim upon which relief can be granted against Defendant.

2.     Plaintiff's Complaint should be dismissed because it is based on privileged communications that were part of negotiations and Mediation with Hon. Mark Bennet (retired Federal Judge).

3.     The contractual duties alleged in paragraphs 42-44 of the Complaint, and upon which the Complaint is based, are now void and inapplicable due to MMIC/Constellation's breach of its duties of good faith and failing to engage in reasonable settlement efforts and settle within policy limits.

4.     MMIC/Constellation has waived the duties referred to in paragraphs 42-44 of the Complaint by breaching their own duties of good faith and failing to engage in reasonable settlement efforts and settle within policy limits.

5.     MMIC/Constellation should be estopped from asserting the duties referred to in paragraphs 42-44 of the Complaint because they have breached their duties of good faith and failed to engage in reasonable settlement efforts and settle within policy limits.

6.     The Court has no subject matter jurisdiction because the matter fails to present a justiciable controversy since Defendant has not attempted to dismiss the appeal and has no present intention of doing so. Moreover, in the event that changes, Defendant will give MMIC/Constellation advance notice, and it would be able to reassert and litigate the claims made in its Complaint here.

7.     The Clinic's compliance with the duties alleged in paragraphs 42-44 of the Complaint should be excused because of MMIC/Constellation's breach of their duties of good faith and refusal to engage in reasonable settlement efforts and settle within policy limits.

WHEREFORE, Defendant prays that Plaintiff's Complaint for Declaratory Judgment and Injunctive Relief be dismissed or otherwise denied in its entirety with the costs assessed against Plaintiff and that Defendant be granted all other relief as is equitable.

A JURY TRIAL IS REQUESTED ON ALL FACT ISSUES

Respectfully submitted,

By: */s/ Nicholas C. Rowley*

**TRIAL LAWYERS FOR JUSTICE, P.C.**
Nicholas C. Rowley  AT0009516
Dominic F. Pechota  AT0006175
Jon Specht  AT0012576
421 W. Water Street, Third Floor
Decorah, IA 52101
Phone: (563) 382-5071
Fax: (888) 801-3616
Email: nr@tl4j.com

ATTORNEYS FOR DEFENDANT