IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DISTRICT

| | |
|---|---|
| MMIC INSURANCE INC., | CASE NO. 3:23-cv-00039-SMR-WPK |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM OF AUTHORITIES IN SUPPORT OF ITS MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| v. | |
| OBSTETRIC AND GYNECOLOGIC ASSOCIATES OF IOWA CITY AND CORALVILLE, P.C., | **(ORAL ARGUMENT REQUESTED)** |
| Defendant. | **(EXPEDITED RELIEF REQUESTED)** |

COMES NOW, Plaintiff MMIC Insurance Inc., by and through the undersigned counsel, pursuant to Fed. R. Civ. P. 65 and L.R. 7(d), and hereby submits its Memorandum of Authorities in Support of its Motion for Temporary Restraining Order and Preliminary Injunction.

## Introduction

Through Attorney Rowley's November 21st filing of a state-court Petition in Johnson County and now his November 28th filings in the pending underlying direct appeal, Attorney Rowley has done precisely what Plaintiff MMIC sought to prevent. Attorney Rowley has now encumbered the direct appeal at the expense of his client's insurance coverage—of whom he is entrusted the obligation to act in the best interest. Plaintiff MMIC now comes to this Court to request immediate, preliminary injunctive relief including action to withdraw the November 28th Motion for Stay, declaratory relief that coverage has now been forfeited under the terms of the contract, and temporary injunctive relief to prevent such further conduct in the underlying direct appeal.

1

**Factual History**

The facts underlying this cause of action are set out more completely in MMIC's Complaint. *See* Doc. # 1. For the purposes of the present Motion, the Clinic operated an obstetric and gynecology practice in Johnson County, Iowa. MMIC was the Clinic's liability insurer. On November 22, 2019, the Clinic was sued for medical malpractice in the Iowa District Court for Johnson County (Case No. LACV081421). Per the insurance contract, MMIC directed, paid for, and defended the Clinic in the action. The jury ultimately awarded the plaintiff a verdict exceeding the Clinic's limits of insurance. Under oath, Dr. Goodman asserted that "justice was not done" at trial. MMIC agreed. Accordingly, that verdict is currently on appeal at the Iowa Supreme Court, Case Number 22-1317 ("the direct appeal"), appealing *inter alia* jury instructions, admission of hearsay, counsel misconduct, and others.

In the spring of 2023, and after the appeal was made and fully briefed (with Shuttleworth & Ingersoll and Troy Booher as counsel), the Clinic retained new counsel, Attorney Rowley. Attorney Rowley, on behalf of the Clinic, represented to MMIC that the Clinic would seek to dismiss the direct appeal in an effort to come to a deal with the plaintiff in the underlying Johnson County action. Given MMIC's right to direct the defense, the direct appeal is not the Clinic's to dismiss. Consequently, MMIC filed the present declaratory judgment action to determine issues of insurance coverage and the parties' obligations. *See, e.g.*, Doc. # 1 ¶ 57 ("MMIC requests an order declaring that dismissal of the direct appeal, or any other interference with the opportunity or nature of the Iowa Supreme Court's decision on the merits, would violate the terms of the Policy, would foreclose the filing of a bad faith cause of action (or any other claim) against MMIC, and would void the Policy *ab initio*.").

The Clinic, by and through Attorney Rowley, filed an Answer rejecting the notion that the Clinic would attempt to encumber the appeal. *See, e.g.*, Doc. # 7 ¶ 3 (noting the Clinic "ha[d] no intention of" encumbering the appeal). The Answer represented to the Court and the undersigned that "MMIC/Constellation will be duly notified of [any] change in position before such action takes place." *Id.* ¶ 12. Then the Iowa Supreme Court set oral argument on the direct appeal for December 14, 2023.

On November 21, 2023, the Clinic, by and through Attorney Rowley, filed suit against MMIC for bad faith.  He also improperly alleged bad faith against MMIC's claim adjuster Nicole Graziano personally.[1]  Finally, he brought claims against the trial defense attorneys at Shuttleworth and Ingersoll under a legal malpractice theory. That case is now before the district court in Johnson County. *See generally Obstetric and Gynecologic Assocs. of Iowa City & Coralville, P.C.*, Dkt. No. LACV084850 (Iowa Dist. Ct., Johnson Cty.). The purpose of that filing—right after the oral argument on the direct appeal was set—was laid bare by Rowley's November 28, 2023, filing at the Iowa Supreme Court. *See* Defendant-Appellant['] s Motion to Stay Appeal and Oral Argument, *S.K. v. Obstetric & Gynecologic Assocs. of Iowa City & Coralville, P.C.*, No. 22-1317 (Iowa Nov. 28, 2023) ¶ 4 ("Current counsel-of-record for Defendant Appellant [the Clinic], the law firm of Shuttleworth & Ingersoll, will likely be withdrawing from the case due to a conflict of interest which exists that would prevent them from continuing as counsel of record in this appeal."). A conflict which was, of course, manufactured by Attorney Rowley and the Clinic to avoid the ordinary and

---

[1] Attorney Rowley has previously been sanctioned for repeatedly naming Nicole Graziano individually in bad faith suits against MMIC. *See* Ruling on Defendant's Motion to Enlarge or Reconsider, *Trueblood v. MMIC Ins., Inc.*, No. LACL153330 (Iowa Dist. Ct., Polk Cty. June 14, 2023).

proper disposition of the direct appeal with an opinion by the Iowa Supreme Court. No notice was ever provided of this change in position. *Compare* Doc. # 7 ¶ 12 ("MMIC/Constellation will be duly notified of [any] change in position before such action takes place."). The benefit?—Attorney Rowley and the Clinic could, according to them, pursue a bad faith claim against MMIC and a legal malpractice action against Shuttleworth & Ingersoll. The problem?—the insurance contract and the law preclude rewarding such litigation maneuvering. On November 29, 2023, the Supreme Court granted the stay.

The Clinic has now taken affirmative efforts to prejudice the direct appeal. It has intentionally disqualified appellate counsel to prevent the appeal from ever being resolved and the truth (i.e., whether Dr. Goodman abided by the standard of care) from seeing the light of day. Attorney Rowley has intervened in the action (counsel not selected by MMIC and, in fact, adverse to MMIC), filed a motion to stay the appeal *ad infinitum* (against the interests and rights of MMIC), publicly represented that he was actively attempting to settle the direct appeal without the insurer, and has irreparably put his client in a far worse position. Relevant here, the insured's failure to cooperate during the defense and adjudication of the underlying litigation has prejudiced MMIC and has breached one of the most elementary contractual obligations of any insured—cooperation.

Accordingly, MMIC asks this Court to enter a preliminary injunction to enjoin the harm that Attorney Rowley and the Clinic have now become set on imposing, or to otherwise find coverage to be forfeited under these circumstances.

## Legal Standards

A party seeking either a temporary restraining order or preliminary injunction must show

(I) the movant is likely to succeed on the merits of the permanent relief sought; (II) the movant is likely to suffer irreparable harm; (III) the equities weigh in favor of the temporary relief; and (IV) the relief is in the public's interest. *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "[N]o single factor is determinative." *Id.* Nevertheless, each is met here.

Substantively, on the insurance policy's language, "[w]henever policy provisions are conditions precedent to coverage under an insurance contract, an insured must show substantial compliance with such conditions." *Simpson v. U.S. Fidelity & Gaur. Co.*, 562 N.W.2d 627, 631 (Iowa 1997). Absent a showing of substantial compliance, excuse, or waiver, prejudice is presumed and shifts the burden to the insured to show a "lack of prejudice." *Id.* at 631–32. Indeed, "[t]he purpose of a cooperation clause is to protect insurers and prevent collusion between insureds and injured parties." *Am. Guar. & Liab. Ins. Co. v. Chandler Mfg. Co., Inc.*, 467 N.W.2d 226, 229 (Iowa 1991). Because the law is clear that the insurer retains the right to direct and control the defense of a liability claim, and because the evidence (including Attorney Rowley's own representations in his recent filings) is likely to reflect collusion between judgment creditor (underlying plaintiff) and the Clinic, this is a paradigmatic cooperation clause violation case. Attorney Rowley and the Clinic have now forfeited coverage, the harm they seek to cause must be preliminarily enjoined, or both.

### Argument

MMIC is entitled to preliminary relief because (I) it is likely to succeed on the merits; (II) it would be irreparably harmed in preserving its interest in the direct appeal were the Clinic and Attorney Rowley permitted to continue to upset and encumber the direct appeal for concededly nefarious purposes; (III) the strength of common law and contractual underpinnings tip in favor of

granting relief; and (IV) the public interest is in preserving the appeal and rejecting the contravention of common law and insurance agreements.

## I.     MMIC is likely to succeed on the merits.

MMIC respectfully submits that it is likely to succeed on the merits of its Complaint. But the standard is not that MMIC *will* succeed—this Court determines only whether there is a "substantial likelihood" or "fair chance" of success. *Kai v. Ross*, 336 F.3d 650, 656 (8th Cir. 2003) (reversing erroneous denial of temporary and preliminary relief, holding it was "not making a final determination of the merits at this time, nor does the test for granting a preliminary injunction require [the Court] to do so"). Indeed, a movant "is not required to prove a mathematical (greater than fifty percent) probability of success on the merits" to be entitled to relief. *Heartland Acad. Cmty. Church v. Waddle*, 335 F.3d 684, 690 (8th Cir. 2003); *Dataphase Sys.*, 640 F.2d at 113 ("[A]n effort to apply the probability language to all cases with mathematical precision is misplaced.").

Rather, the preliminary relief standard only seeks to "prevent such a change in the relations and conditions of persons and property as may result in irremediable injury to some of the parties before their claims can be investigated and adjudicated." *Id.* at 113 n.5. MMIC merely asks for exactly that—to preserve the status quo of the merits appeal prior to Rowley's November 28, 2023, appearance and request for stay. The Complaint and the underlying direct appeal are to be fully adjudicated on the merits. MMIC submits it is likely to succeed under two distinct theories— common law insurance principles and contract—under Iowa law.

The Complaint states relief in the form of declaratory judgment and injunctive relief. As to the substantive law governing each cause of action, the Court looks to Iowa law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Indeed, the Declaratory Judgment Act (28 U.S.C. § 2201(a))

is strictly procedural and confers no substantive rights. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 199 (2014). So, too, are the Federal Rules procedural. *See In re Baycol Prods. Litig.*, 616 F.3d 778, 785 (8th Cir. 2010) (reaffirming the Court applies federal procedural rules); Fed. R. Civ. P. 65 (providing procedural mechanism to seek injunctive relief in federal court). On the substance, therefore, MMIC maintains it is likely to prevail under (A) substantive Iowa insurance principles; and (B) the contract between MMIC and the Clinic. Each will be addressed in turn.

> **A.**     **The insurer has oft-recognized common law control over the litigation.**

It is axiomatic that "when an insurer defends an insured, it has control over the defense and settlement." *Wells Dairy, Inc. v. Travelers Indem. Co. of Ill.*, 266 F. Supp. 2d 964, 967 (N.D. Iowa 2003) (quoting *Kelly v. Iowa Mut. Ins. Co.*, 620 N.W.2d 637, 643 (Iowa 2000)). Iowa law is consistent with that of many states around the country. *E.g.*, *Builders Concrete Servs., LLC v. Westfield Nat'l Ins. Co.*, 486 F. Supp. 3d 1225, 1230 (N.D. Ill. 2020) ("[I]f different results in the underlying litigation affect only the relative responsibility of the insurer and the insured for the judgment without eliminating coverage completely and irreparably, the insurer retains the right to control the defense."); *Ottaviano v. Genex Co-op., Inc.*, 15 A.D.3d 924, 924 (N.Y. App. Div. 2005) ("As a general rule, a liability insurer has a right to control the defense of the underlying litigation against its insured based on the right of the insurer to protect its financial interests."). Accordingly, MMIC's position that it retains the right to control the conduct of litigation by virtue of its role as liability insurer is black letter law, and likely to succeed. The efforts by the insured to prejudice a properly filed and briefed direct appeal – days before scheduled oral argument - directly contravene that right.

### B.      The Policy also precludes Attorney Rowley's and the Clinic's conduct.

The insurance policy itself prohibits—as a matter of contract law—the Clinic from acting

in a way contrary to the insurer's right to control the litigation. Indeed, the insurance agreement

repeats what Iowa law has long held: "We have the right to control the defense of and retain an

attorney to defend any *claim* covered by this insurance." *See* Policy (Section ONE (C)) (emphasis

in original). Further, the policy prohibits an insured (the Clinic) from admitting liability or

incurring expenses without MMIC's authorization. *See* Policy Common Conditions (M)(2) ("The

*insured* must not, except at the *insured*'s own expense, make any payment, admit any liability or

incur any obligation other than reasonable medical expenses." (emphases in original)). Finally, the

Clinic is contractually bound by material terms requiring the Clinic's cooperation with the

litigation:

> The *insured* must fully cooperate with us in the investigation of *claims*, the
> negotiation of settlements, and the conduct of litigation. The *insured* is obligated to
> attend hearings and trial and assist in the presentation of evidence. The *insured*
> must also cooperate with us in pursuing any right of contribution or subrogation
> against a person or organization that is or may be liable to the *insured*. The *insured*
> will make any assignment necessary to assist in enforcing any right to contribution
> or subrogation.

Policy Common Conditions (M)(1) (emphases in original) (including the negotiation of

settlements and the conduct of litigation).

As applied, Attorney Rowley and the Clinic have now violated each and every cooperation

element required of them. *First*, both have subverted the Policy's requirement that the insurer

direct and control the conduct of the litigation. *See* Policy (Section ONE (C)); *Wells Dairy, Inc.*,

266 F. Supp. 2d at 967.

*Second*, Attorney Rowley and the Clinic have impermissibly filed an action at the eleventh

hour solely in an effort to disqualify retained appellate counsel and otherwise prejudice MMIC's rights and interests. This is not in keeping with the insurer's right to direct and control the defense; nor the Clinic's contractual obligation to cooperate in the conduct of the litigation.

*Third*, Attorney Rowley and the Clinic have now, apparently, withdrawn consent for any other MMIC-selected counsel. *See* Defendant-Appellant's Objection to Appearances of Troy L. Booher and Beth E. Kennedy, *S.K. v. Obstetric & Gynecologic Assocs. of Iowa City & Coralville, P.C.*, No. 22-1317 (Iowa Nov. 28, 2023) ¶¶ 2, 4 ("Defendant-Appellant [the Clinic] has not consented to be represented by the Zimmerman Booher law firm…" and "Consent and a signed representation agreement are required to form an attorney-client relationship.").[2] Attorney Booher has been appellate counsel since the outset of the appeal—first under a *pro hac vice*, and now as a fully admitted practitioner in Iowa. The Clinic had not once objected to his representation prior. Of course, consent is itself demonstrated by the Clinic's obligatory conditions precedent to the operative insuring agreement. Yet, under Attorney Rowley, the Clinic has now expressly reneged and violated its contractual obligations.

*Fourth*, Attorney Rowley has expressly represented that he and the Clinic wish to negotiate *ex parte*. *See* Defendant-Appellant[']s Motion to Stay Appeal and Oral Arguments, *S.K. v. Obstetric & Gynecologic Assocs. of Iowa City & Coralville, P.C.*, No. 22- 1317 (Iowa Nov. 28, 2023) ¶ 17 ("In

---

[2] Obviously, Attorney Rowley's contrived prerequisites for an attorney-client relationship find no support in the law. *See, e.g.*, *Iowa Supreme Court Atty. Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 599 (Iowa 2011) (describing the formation of an attorney-client relationship, and *not* predicating the same on some 'representation agreement'). But even if they did, the Clinic has agreed to be bound by the insurer's choice of counsel in exchange for the insurer funding the defense and litigation. The insured's efforts to renege on that agreement now are precisely the problem. It cannot reject its obligations under the insurance policy and seek to hide behind it in terms of both liability and accusations of an extra-contractual nature. Any such claims are now necessarily foreclosed.

summary, Defendant-Appellant clinic wishes to negotiate with Plaintiff-Appellee [underlying judgment creditor S.K.] and get the underlying case resolved."). This is precisely the type of negotiation prohibited by the Policy's plain language. *See* Policy Common Conditions (M)(1) ("The ***insured*** must fully cooperate with us in…the negotiation of settlements….").

Accordingly, the efforts already undertaken by Attorney Rowley and/or the Clinic to prejudice the appeal violate MMIC's common law insurance rights and violate the most fundamental aspects of liability insurance. MMIC is likely to succeed under both theories.

## II.     **MMIC would be irreparably harmed by the declination of a grant of preliminary relief.**

MMIC further submits it will be irreparably harmed. "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Rogers Group, Inc. v. City of Fayetteville, Ark.*, 629 F.3d 784, 789 (8th Cir. 2010). MMIC will suffer both monetary and non-monetary damages, including customer goodwill; the right to pursue an appeal of an excess verdict against its insured; vindication for Dr. Goodman, MMIC, and the defense attorneys in the case; and other intangible losses.[3] Such losses are important considerations in determining whether to grant preliminary relief. *E.g.*, *Med Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003) ("Loss of intangible assets such as reputation and goodwill can constitute irreparable injury." (quoting *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002))). And the injuries above are unlikely to be fleeting. Rather, prejudice exists. Moreover, should not relief be afforded to MMIC in asking the

---

[3] MMIC is a mutual company, owned by the doctors who pay premiums to MMIC. Thus, it is not just MMIC that is prejudiced. Every Iowa physician who has paid premium to MMIC and expects that MMIC will defend its care – just as it did and continues to try to do for Dr. Goodman – is prejudiced.

appeal to go forward, any errors in instruction, admission of hearsay evidence, miscalculating of fault sharing, and counsel misconduct will be permanently forfeited. And MMIC would bear the brunt of the harm.

### III.    The Balance of Equities and Public Interest warrant the requested relief.

Finally, MMIC submits that both the final considerations (balance of equities and public interest) counsel for granting the requested relief. These two factors are often treated together. *See, e.g.*, *Medicine Shoppe Int'l*, 336 F.3d at 805. "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase Sys.*, 640 F.2d at 113. "[T]he 'balance of harm' analysis examines the harm of granting or denying the injunction upon both of the parties to the dispute and upon other interested parties, including the public, as well." *McLeodUSA Telecomm'ns Servs., Inc. v. Qwest Corp.*, 361 F. Supp. 2d 912, 921 (N.D. Iowa 2005).

Indeed, Attorney Rowley and the Clinic's conduct curries it no equitable favors in at least the following ways: (A) Attorney Rowley, in an effort to escape a judgment execution he brought upon the Clinic, represented to the Johnson County Sheriff's Office that no bad faith claim existed—*the same claim he filed against MMIC last week*; (B) Attorney Rowley has been colluding with counsel for underlying plaintiff/judgment creditor since the March 2022 verdict—the very conduct cooperation clauses were intended to prevent; and (C) Attorney Rowley is necessarily conflicted, and his public filings, requests, and actions thus far implicate a plethora of ethical and legal questions; and (D) Attorney Rowley sought to circumvent this Court by filing elsewhere an

extra-contractual claim that what would have been a compulsory counterclaim in this case.[4]

**A.      Attorney Rowley did not tender the claims to law enforcement and otherwise represented these claims did not exist.**

On October 31, 2022, the Clinic filed bankruptcy in the Southern District of Iowa. Per bankruptcy's automatic stay provision, MMIC did not remit payment of the policy proceeds. *See* 11 U.S.C. § 362(a); *Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020) ("Under the Bankruptcy Code, filing a petition for bankruptcy automatically 'operates as a stay' of creditors' debt-collection efforts outside the umbrella of the bankruptcy case.").

On April 3, 2023, the Bankruptcy Court for the Southern District of Iowa dismissed the bankruptcy matter. The Clinic immediately appealed the Bankruptcy Court's dismissal to the United States District Court for the Southern District of Iowa. *See In re Obstetric & Gynecologic Assocs. of Iowa City & Coralville, P.C.*, No. 4:23-cv-00109-SMR-SBJ, ECF No. 1 (S.D. Iowa Apr. 4, 2023). During the pendency of the appeal of the Bankruptcy Court's dismissal, the Bankruptcy Court ordered a stay of execution by S.K. (judgment creditor) against the Clinic for the underlying judgment. *See In re Obstetric & Gynecologic Assocs. of Iowa City & Coralville, P.C.*, No. 22-01174-als11, ECF No. 307 (Bankr. S.D. Iowa Apr. 3, 2023) ("The Conservator is stayed from undertaking any collection efforts against the assets of the Debtor."). Consequently, no execution could be had against the Clinic during this time. The Clinic then retained new counsel (Nicholas Rowley). The Clinic suddenly reversed course and dismissed the Bankruptcy Court appeals, lifting the stay on execution and subjecting themselves to the consequences thereby. *See id.* ECF No. 327 (Apr. 28,

---

[4] Attorney Rowley's filing leaves him as the only counsel left representing the Clinic in the appeal. As counsel for the Clinic in a contemporaneous bad faith claim, he obviously has financial incentive to lose the appeal, despite the fact that the substance of the appeal is clearly in the best interest of Dr. Goodman.

2023).

Since Attorney Rowley had lifted the bankruptcy stay and subjected his client (the Clinic) to execution in an effort to maximize his personal agenda against MMIC, the underlying plaintiff and judgment creditor S.K. could execute on the underlying judgment against the Clinic. It attempted to do so. *See* Return of Service on Execution, *S.K. v. Obstetric & Gynecologic Assocs. of Iowa City and Coralville, P.C.*, No. LACV081421 (Iowa Dist. Ct., Johnson Cty. June 7, 2023) ("[N]othing to give me."). The Johnson County Sheriff's Office had direct contact with Attorney Rowley during the execution process—that is, while the Sheriff's Office executing on the underlying judgment was physically present on the Clinic's premises. ***Indeed, this very execution was precipitated by Attorney Rowley's dismissal of the Bankruptcy Court appeals.*** Nevertheless, Attorney Rowley represented to law enforcement during that conversation that the Clinic had *no* choses in action to provide.[5] This, itself, is discordant with the Clinic's representations in the Bankruptcy case that it had a cause of action in bad faith against MMIC. *See In re Obstetric & Gynecologic Assocs. of Iowa City & Coralville, P.C.*, No. 22-01174-als11, ECF No. 147 (Bankr. S.D. Iowa Dec. 13, 2022), at 10 ¶¶ 74.1, 74.2.

In the face of two executions on those claims, the newly-filed Johnson County bad faith lawsuit is a contrivance by Attorney Rowley for the purpose of opening a vehicle for encumbering the direct appeal at the Iowa Supreme Court. There were two executions on those choses in action. Attorney Rowley represented to law enforcement there was none to give. Moreover, Attorney

---

[5] The video of this conversation could not be clearer.  Mr. Rowley clearly tells the sheriff that "[t]here's no such thing as a bad faith claim that you can collect." *See* Execution Body Camera Transcript, at 30. Yet, here he is, six months later, filing a lawsuit alleging that very claim.

Rowley's new lawsuit in Johnson County is premised on the claims Rowley represented he did not have.

Simply, Attorney Rowley's subsequent actions and filings with Johnson County and the Iowa Supreme are directly contradictory to the very representations he made to law enforcement during the Johnson County Sheriff's Office's civil execution.[6] Attorney Rowley attempted to safeguard any purported bad faith claim for himself by representing to law enforcement no such claim existed, then turned around and filed the very same to prejudice MMIC and to serve his agenda.[7] The "pending" Johnson County bad faith claim is premised on falsehood—either to the Johnson County Sheriff's Office or the Iowa District Court for Johnson County. *See* Iowa R. Civ. P. 1.413(1) ("Counsel's signature to every motion, pleading, or other paper shall be deemed a certificate that: counsel has read the motion, pleading, or other paper; that to the best of counsel's knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or cause an unnecessary delay or needless increase in the cost of litigation."). No matter to whom the falsehood was directed, it is categorically improper and estops the very claim the Clinic brings against MMIC—and, accordingly, prohibits Attorney Rowley's conduct at the Iowa Supreme

---

[6] "A person commits interference with official acts when the person…knowingly resists or obstructs the service or execution by any authorized person of any civil or criminal process or order of any court." Iowa Code § 719.1(1)(a) (codifying a simple misdemeanor).

[7] Indeed, the undersigned can represent to this Court that it received two petitions for bad faith allegations—one draft petition from S.K., and one filed in Johnson County by Attorney Rowley/the Clinic. Both were received within a week of each other and asserted materially the same claims against MMIC.

Court. The claim is improper, the timing is improper, the representations therein and thereon are improper, and the efforts to circumvent this Court's authority at the eleventh hour to derail the imminent direct appeal at the expense of his client (the Clinic) is improper. Attorney Rowley is entitled to no equitable inferences in his favor.

> **B.      Attorney Rowley is colluding with counsel for underlying plaintiff.**

It is axiomatic that insuring agreements discourage, and refuse to reward, collusion between the insured and the plaintiff/injured party. *Chandler Mfg. Co., Inc.*, 467 N.W.2d at 229. This case epitomizes the concern for collusion.

*First*, before Attorney Rowley was retained to represent the Clinic (and before he prioritized any bad faith claim for media or personal gains), he presented with counsel for the underlying plaintiff on this very case:



*See Webinars*, Trial Lawyers Univ., *available at* https://triallawyersuniversity.com/webinars (Mar. 30, 2022). The presentation is accessible on the Trial Lawyers University website for those

attorneys who affirm they are not defense counsel. This circumstance cannot be understated. Months before his retention, Mr. Rowley presided over a presentation touting a verdict against parties for whom he has now been retained to represent their interest. There is no clearer collusion and/or conflict than counsel representing directly adverse parties presenting together on a plaintiff-only platform on the very case to which the attorneys are now purportedly adverse.

*Second*, and a part of this declaratory judgment action's initial impetus, Attorney Rowley issued correspondence to MMIC's counsel that he was discussing "*with the Plaintiffs*...how we could work together and dismiss the appeal and move forward with an action together against MMIC/Constellation/Defense Counsel." *See* Doc. # 1-1, at 1 (emphasis supplied). There can be no question any longer of Attorney Rowley's agenda.

*Third*, as just yesterday set before the Iowa Supreme Court, Attorney Rowley "wishes to negotiate with Plaintiff-Appellee and get the underlying case resolved." *See* Defendant-Appellant[']s Motion to Stay Appeal and Oral Arguments, *S.K. v. Obstetric & Gynecologic Assocs. of Iowa City & Coralville, P.C.*, No. 22-1317 (Iowa Nov. 28, 2023) ¶ 17.

*Fourth*, that the Appellee (underlying Plaintiff) today consented to Attorney Rowley's request for stay is further demonstration of collusion. Attorney Rowley premised the requested stay on new claims brought in Johnson County—claims on which Appellee (underlying Plaintiff) used the adversarial mechanisms to attempt to involuntarily garner.

The equities cannot be more firmly in favor of MMIC when Attorney Rowley and the Clinic's conduct constitutes the precise conduct insuring agreements are designed to preclude. *Chandler Mfg. Co., Inc.*, 467 N.W.2d at 229.

**C.      Attorney Rowley's actions are not in the best interest of the Clinic.**

Whether the jury verdict against the Clinic was proper is currently on appeal. That appeal would vindicate the Clinic. Even the principal doctor in the underlying suit, Dr. Goodman, testified in her Bankruptcy Rule 2004 Examination "I don't think justice was served [by the jury's verdict]." *See* Jill Goodman Rule 2004 Exam., at 150:25. Indeed, Dr. Goodman took the stand in defense of her own care. MMIC believe in the propriety of Dr. Goodman's care and has merely sought to have her conduct reviewed by an Iowa court without error. Prejudicing that appeal serves Attorney Rowley's agenda to bring third-party, extra-contractual claims. Indeed, Attorney Rowley and the Clinic state as much. Its Answer notes that "[t]he Clinic and its insured doctors can work out and prosecute the bad faith claim *after the appeal is completed*…." *See* Answer (Doc. # 7) ¶ 50 (emphasis supplied).[8]

Additionally, when MMIC, the Clinic, and the Bankruptcy Court had arrived at a peaceable solution of staying any execution against the Clinic during the appeal of the Bankruptcy Court dismissal, Attorney Rowley undid the same. He dismissed the Bankruptcy Court appeal, the pendency of which would have protected the Clinic from any execution, and allowed the Clinic to either proceed with practice or wind the business down at a rational pace. It was not his goal to stop the execution—only to prevent the Bankruptcy Appeal from moving forward. He employs the same strategy now with the direct appeal. These actions are not in the Clinic's best interests.

Finally, the Clinic's failure to abide by Policy provisions and support the defense is prejudicial. MMIC honored its policy obligations and paid the Clinic's limits of $12 million. A

---

[8] It is difficult to see how MMIC would *not* be prejudiced. Indeed, Attorney Rowley's filings are only for the purpose of preventing MMIC from seeing the direct appeal resolved.

declaration that the Policy is void would inure a right of restitution in the policy proceeds already dispensed. Stated differently, MMIC would be able to collect the dispensed $12 million from the Clinic - $12 million that is rightfully MMIC's money if the appeal is successful. Whether the Clinic can thereafter seek to recover the same from Attorney Rowley is for another matter and another court. What is relevant here is that a void Policy entitles MMIC to its policy proceeds back from its insured. *Cf.* Iowa Code § 625A.15.

Attorney Rowley and the Clinic have now disavowed their contractual obligations to cooperate in the conduct of litigation, to negotiate only by and through the insurer, and to permit the insurer to select defense counsel. Moreover, Attorney Rowley and the Clinic made the volitional decision to dismiss the Bankruptcy Court appeal to inure the harm they want to now attribute to MMIC (the execution). But, Attorney Rowley's representations to law enforcement therein foreclose the very cause of action all of the foregoing contrivances and repudiations were calculated to achieve. The policy forecloses any relief at this point because of their conduct. The equities do not weigh in favor of such conduct.

Attorney Rowley is irreparably conflicted. His representation of the Clinic in the direct appeal is improper.

### D. Attorney Rowley disregarded the Federal Rules' requirement of his compulsory counterclaim to have maximum impact on the direct appeal.

The Federal Rules command that "[a] pleading must state as a counterclaim any claim that…the pleader has against the opposing party if the claim…arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and…does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). Courts within this Circuit apply a "logical relation" test to the compulsory counterclaim rule—if the

counterclaim has a 'logical relation' to the initial claim, it is compulsory. *Tullos v. Parks*, 915 F.2d 1192, 1195 (8th Cir. 1990).

"A counterclaim which is compulsory but is not brought is thereafter barred." *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974). Apparently, the Clinic—by and through Attorney Rowley—felt the declaratory judgment Complaint was logically related to a bad faith claim, headlining the Answer it filed before this Court. *See* Answer (Doc. # 7) ¶¶ 2, 21, 23, 25, 50 (each discussing the Clinic's purported bad faith claim against MMIC in response to MMIC's claims). Nevertheless, despite the Clinic's and Rowley's plain acknowledgement that the claims are logically related, no counterclaim was brought in this action. Rather, the Clinic and Attorney Rowley sought to maximize the impact—filing it separately to end-run this Court's authority and waiting until the appeal's disposition was imminent. Such litigation maneuvering and tactics are not tolerated.

The bad faith claim is no excuse for delaying the disposition of the appeal—it was impermissibly filed as a harassment tactic to circumvent obligatory compulsory counterclaim pleading requirements.[9] This conduct should not be rewarded, and tips the equities further in favor of MMIC on this Motion.

## IV. Rule 65(c) only requires a nominal bond for this preliminary relief.

MMIC's request for preliminary relief is narrow, specific, and limited to the Clinic's conduct with respect to a fully briefed direct appeal before the Iowa Supreme Court. Out of an

---

[9] There is a significant question whether the Clinic still even owns the bad faith claim. Just this week, MMIC was provided a "draft Complaint" from Plaintiffs in the underlying action in which they alleged that they, and not the Clinic, owned the bad faith claim, having acquired it through post-trial execution of a chose in action.

abundance of caution, MMIC stands ready to post a nominal bond, as might be required by Rule 65(c). Indeed, the Rule provides:

> The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

Fed. R. Civ. P. 65(c).

To the extent the Court determines a bond is mandatory, it should require only a nominal bond. Indeed, the relief sought is no restriction on the Clinic's property, the Clinic's business, the Clinic's investment, or the Clinic's substantial rights (it has no right to dismiss the appeal). In this type of circumstance, courts routinely require only a nominal bond. *E.g.*, *Sak v. City of Aurelia, Iowa*, 832 F. Supp. 2d 1026, 1048 (N.D. Iowa 2011) (ordering $1 bond). MMIC respectfully submits this Court should also order a nominal bond—to the extent it is even necessary here. There is no threat of loss to the Clinic by granting the preliminary relief, and the bond will not have to be released. MMIC's requested relief is merely to preserve the status quo of pending litigation. Accordingly, the Court should order a nominal bond of $1–100 *at most*, if it is necessary to comply with Rule 65(c)'s procedural requirement.

## V.   MMIC requests the earliest hearing date.

MMIC respectfully requests the earliest hearing date on this emergency Motion in light of the circumstances.

### Conclusion

For the reasons stated herein, MMIC respectfully requests the Court grant its Motion and order relief as set forth therein.

**Certificate of Service**

The undersigned certifies that the foregoing instrument was served upon counsel of the parties to this action on November 29, 2023, by CM/ECF.

*/s/ Adam D. Zenor*

Copy to:

Nicholas C. Rowley
Dominic F. Pechota
Jonathan M. Specht
Trial Lawyers For Justice
421 West Water Street, Third Floor
PO Box 228
Decorah, IA 52101
nr@tl4j.com
dominic@tl4j.com
jon@tl4j.com

ATTORNEYS FOR OBSTETRIC AND GYNECOLOGIC ASSOCIATES OF IOWA CITY AND CORALVILLE, P.C.

ZENOR KUEHNER, PLC

By: */s/ Adam D. Zenor*
    Adam D. Zenor, AT0009698

By: */s/ Derek R. LaBrie*
    Derek R. LaBrie, AT0014157

111 East Grand Avenue, Suite 400
Des Moines, IA 50309
Phone: 515/650-9005
Fax: 515/206-2654
adam@zenorkuehner.com
derek@zenorkuehner.com

MEISSNER TIERNEY FISHER & NICHOLS, SC

By: */s/ Mark D. Malloy*
    Mark D. Malloy, *Pro Hac Vice*

111 East Kilbourn Avenue, 19th Floor
Milwaukee, Wisconsin 53202
Phone: 414/273-1300
Fax: 414/273-5840
mdm@mtfn.com

ATTORNEYS FOR MMIC INSURANCE, INC.