**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF IOWA**

**EASTERN DIVISION**

| | |
|---|---|
| MMIC INSURANCE INC., | |
| Plaintiff, | 3:23-CV-00039 |
| v. | |
| OBSTETRIC AND GYNECOLOGICAL ASSOCIATES OF IOWA CITY AND CORALVILLE, P.C., | **DEFENDANT'S RESPONSE TO PLAINTIFF MMIC'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| Defendant. | |

COMES NOW, Defendant, Obstetric and Gynecologic Associates of Iowa City and Coralville, P.C. (hereinafter "the Clinic"), by and through counsel, and state as follows in Response to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.

1.      No emergency exists. None whatsoever. To say otherwise is disingenuous. MMIC's allegations are frivolous at best. The Bankruptcy Court determined for itself how badly behaved MMIC is and how it manufactured a bad faith bankruptcy to avoid paying its $12 million policy limits. MMIC is responsible for closing down an Iowa OB/GYN clinic and causing severe damage to the reputations, careers, and lives of three Iowa physicians. The bad faith conduct by MMIC will likely shock the Court's conscience when it truly sees what happened in the underlying case. As things stand, the Clinic has no assurance from MMIC that there will be indemnification in the event of an unsuccessful Appeal or a new trial with a similar or even higher verdict and judgment.

1

2.	MMIC's claim of "an emergency" is disingenuous because the Appeal in the underlying State Court case is *stayed.* Nothing happens during a stay.

3.	The Iowa State Supreme Court was provided with pleadings in this Federal Court case, and the Clinic's bad faith case recently filed against MMIC, *OB-GYN Associates, et al.,* v. *MMIC Insurance, et al.* matter, Case No. LACV084850, in the Iowa District Court for Johnson County, and after reviewing those materials decided that a "stay" of the Appeal was appropriate.

4.	The suggestion that the undersigned counsel manufactured the case against Shuttlesworth & Ingersoll (hereafter Shuttlesworth) to create a conflict of interest in the *S.K.* Appeal is untrue. The Clinic's claims for legal malpractice and breach of fiduciary duty against Shuttlesworth in connection with its representation of the Clinic in the underlying medical malpractice lawsuit were and are based on a solid foundation of law and the facts of the underlying case. These claims were filed on a good faith basis. The factual basis for these claims against the Shuttlesworth will be elucidated as discovery progresses in the *OB-GYN Associates et al.* v. *MMIC Insurance et al.* matter, Case No. LACV084850, in the Iowa District Court for Johnson County.

5.	MMIC and its paper tigers are simply throwing gobs of mud at the wall, attacking the Clinic's lawyers, and trying to shift focus away from the reality of MMIC's years of bad faith and fraudulent conduct in the State of Iowa. Basically, what MMIC wants is a gag order and an unconstitutional order preventing the insured physicians and the Clinic that it tortiously caused harm to from protecting themselves. MMIC and its bad faith and fraudulent conduct have brewed the situation that now exists where the Clinic had to shut down, where doctors lost their jobs, and where a large multi-eight-figure verdict remains outstanding in the State of Iowa.

6.      If and when an agreement is reached with the Plaintiff in the underlying *S.K.* State Court action to settle and jointly sue MMIC for bad faith, fraud, and punitive damages, a motion seeking a good faith determination will be filed with this Court, the Iowa State Court, and the Iowa Supreme Court. Authority exists in other jurisdictions, which can be looked at and studied to see how Courts in situations like this can look at a proposed settlement agreement and make a "good faith determination."

7.      Notwithstanding the allegations and insinuations in Plaintiff's Motion, counsel for the Clinic and its principals (three women physicians whose practice was destroyed by MMIC's bad faith) are doing their best to do what is right.

8.      Importantly, MMIC insists that the Clinic allow the Appeal to move forward and agree to lift the stay order issued by the Iowa Supreme Court. MMIC has only offered The Clinic one lawyer to represent it on Appeal. This lawyer is Troy L. Booher. A review of the files in this case showed that he was an out-of-state lawyer who was initially admitted on this case pro hac vice. Mr. Booher is from Utah. The Clinic and its physicians did not even know Mr. Booher was a licensed Iowa lawyer. Mr. Booher is a very qualified lawyer. In fact, MMIC is a regular client of Mr. Booher. Mr. Booher has directly represented MMIC, where MMIC has been sued by its insureds for very similar conduct as the Clinic alleges in the Iowa State Court bad faith case. Importantly, this was never disclosed to the Clinic or its three physicians. In fact, this was only recently discovered. Mr. Booher, to date, has never even met or had a conversation with the Clinic or its three physicians. None of this matters to MMIC, who is contending that the Clinic and its lawyer, Mr. Rowley, are violating the cooperation clause by not allowing Mr. Booher to move forward with the Appeal. The facts of this case, what MMIC did, and how MMIC is now claiming to be the victim are ludicrous.

9.     This Court should be aware that counsel for the Defendant Clinic (Mr. Rowley & Mr. Bidegaray) have been in good faith communications with Troy L. Booher (since this is the only attorney MMIC has agreed to provide as an option).

10.    It is respectfully requested that this Court review the letter from Daniel Bidegaray questioning what appears to be a textbook conflict of interest and the response provided by Mr. Booher (attached as Exhibits A & B, respectively).

11.    As the attached correspondence sets forth, Mr. Booher represented MMIC's parent corporation, Constellation, in other matters while representing the Clinic. Therefore, were Mr. Booher to represent the Clinic in the S.K. Appeal going forward, this could raise a concern that Mr. Booher concurrently represented two clients whose interests are in direct conflict, i.e., MMIC/Constellation and the Clinic (who are suing each other in two different cases).

12.    The Clinic is currently making a claim against MMIC/Constellation for bad faith in the *OB-GYN Associates et al.* v. *MMIC Insurance et al.* matter. The Clinic is being sued by MMIC in this case in Federal Court.

13.    Iowa R. Prof. Cond. 32:1.7 (Conflict of Interest: Current Clients) states as follows: "(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer."

14.    The Clinic and its physicians need an Appellate lawyer who can advise them as to whether they are better off hedging their bets with the Appeal or entering into a settlement and joint bad faith prosecution agreement against MMIC with the medical malpractice plaintiff in the State Court case that the Appeal is based on. The Clinic and its physicians deserve a lawyer they can ask questions to and get answers from. Mr. Booher, up to this point in time, has had many communications with MMIC but zero communications with the Clinic or its physicians. Nonetheless, a meeting is being scheduled for the Clinic to meet Mr. Booher for the first time so they can decide if they feel confident in Mr. Booher's representation. However, a problem exists given that Mr. Booher is a key witness in the bad faith case against MMIC and the fact that he has been MMIC's counsel in other cases where physicians sued MMIC. Mr. Booher witnessed all of MMIC's conduct since the verdict because MMIC called him on the day of the $97 million verdict. Mr. Booher had duties to the Clinic and its physicians from the moment he agreed to get involved. Mr. Booher never told the Clinic that they had the option of suing MMIC instead of filing for bankruptcy, a filing that the Bankruptcy Judge dismissed and deemed to be made in bad faith. Mr. Booher was involved with motions concerning the bond that MMIC promised to post to protect the Clinic and then reneged on. One would think that if a lawyer saw his clients, a Clinic, and three physicians in the situation that existed after the verdict and judgment, the lawyer would sit his clients down and tell them that they have rights beyond that which the insurer is telling them they have. The fact that other lawyers were involved does not excuse Mr. Booher's duties as a lawyer admitted pro hac vice or as a new admittee.

15.    That being said, the good faith conduct of the Clinic and its counsel, including Mr. Rowley, is shown by the letter back from Mr. Booher. Mr. Booher, as an experienced appellate lawyer, does not say it is certain or highly probable that the Iowa Supreme Court grants a new

trial and that a new trial would be a good thing or a worse thing. Mr. Booher acknowledges that the Clinic is at risk of losing the Appeal. His language is that there is a "good chance" and that the "chance" of a new trial is "much better than the chance of a full affirmation."  What in the world does "much better" mean? 65%? 70%? This is coming from MMIC's lawyer of choice, the lawyer MMIC turns to when it is getting sued.

16.     Therefore, the right thing to do is exactly what the Clinic and its lawyers are doing, which is to ask the Iowa Supreme Court to stay this case, which it immediately did, and to continue negotiations and get to a point where this case can be fully litigated or where a proposed settlement agreement can be presented to this Court, to the Iowa State Court or the Iowa Supreme Court. Until then, nothing is happening. A "stay" means nothing is happening; the case is frozen in time.

17.     MMIC looks at the scheduling order in the Federal Court case and has nothing to lose if there is no stay. MMIC gets to throw the dice and gamble some more because we will not have this case heard in time. It is a creative strategy, but one that violates due process by asking the Federal Court to summarily exercise jurisdiction over two State Court matters.

18.     The granting of the requested Preliminary Injunction and Temporary Restraining Order is uncalled for.

19.     Furthermore, the "Plaintiff MMIC" has not met the requirements for requesting a preliminary injunction under federal law. As the Eighth Circuit stated in *Richland/Wilkin Joint Powers Auth. v. United States Army Corps of Eng'rs*, 826 F.3d 1040, 1037 (8th Cir. 2016), the party requesting a preliminary injunction "must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Richland/Wilkin Joint Powers Auth. v. United States Army Corps of Eng'rs*, 826 F.3d 1040, 1037 (8th Cir. 2016),

6

quoting *Roudachevski v. All-Am. Care Ctrs., Inc.,* 648 F.3d 701, 706 (8th Cir. 2011)). Furthermore, as the Eighth Circuit stated in *Gelco Corp. v. Coniston Partners,* 811 F.2d 414, 418, "The failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction, for '[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.'" *Gelco Corp. v. Coniston Partners,* 811 F.2d 414, 418 (8th Cir. 1987) (internal citations omitted).

Here, there is no irreparable harm because the Clinic and its lawyer, Mr. Rowley, did this the right way by asking for a stay. While there is a stay, nothing can happen. No harm can come to either the Clinic or MMIC.

20.     Importantly, as the Eighth Circuit stated in *Watkins, Inc. v. Lewis*, a preliminary injunction is not appropriate when the requesting party has "an adequate remedy at law." *Watkins, Inc. v. Lewis*, 346 F.2d 841, 844 (8th Cir. 2003).

21.     The requesting party in this Federal Court Case, Plaintiff MMIC, has filed a Motion to Intervene before the Iowa Supreme Court in the *S.K.* Appeal and take over. The Iowa Supreme Court has not yet ruled on that Motion. Wherefore, it is requested that this Federal Court case be stayed until the Iowa Supreme Court decides whether MMIC can step in and take over the Appeal in Iowa State Court. If MMIC is allowed to intervene, then this case is moot. In this case, MMIC should be estopped from arguing against the request for a stay. The Clinic contends that the motion to intervene in the Iowa State Court case is what MMIC should have done in the first place and that doing so now shows the frivolous strategy of filing a case in Federal Court.

22.     The Clinic and its counsel are confident that the approach that is being taken is proper, ethical, and within the best interests of the Clinic and the interests of justice.

23.     A full trial of the *OB-GYN Associates et al.* v. *MMIC Insurance et al.* matter on the merits is going to be quite telling, as will the depositions of MMIC's agents and employees and discovery. In that regard, MMIC needs to turn over its claims file and other documents requested. It took other investigative measures to discover the long-standing attorney-client relationship between MMIC and Mr. Booher.

WHEREFORE, Defendant Obstetric and Gynecologic Associates of Iowa City and Coralville, P.C. pray that the Court deny Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction in its entirety and that the Court Stay this case pending the motion by MMIC in the Iowa Supreme Court.

Dated this 8th day of December 2023.          Respectfully submitted,

**TRIAL LAWYERS FOR JUSTICE, P.C.**

By:  */s/ Nicholas C. Rowley*

Nicholas C. Rowley    AT0009516
421 W. Water Street, Third Floor
Decorah, IA 52101
Phone: (563) 382-5071
Fax: (888) 801-3616
Email: nr@tl4j.com

ATTORNEYS FOR DEFENDANTS
OBSTETRIC AND GYNECOLOGICAL
ASSOCIATES OF IOWA CITY
AND CORALVILLE, P.C.