

**EXHIBIT**

**A**

# Re: S.K. v. Obstetric & Gynecologic Associates

**Daniel Bidegaray** <daniel@bidegaraylawfirm.com>                    Tue, Dec 5, 2023 at 8:06 AM
To: Nicholas Rowley <ncr@tl4j.com>, "Troy L. Booher" <tbooher@zbappeals.com>
Cc: "Beth E. Kennedy" <bkennedy@zbappeals.com>, Jon Specht <jon@tl4j.com>, Mike Abourezk <mike@abourezk.com>,
Ricardo Echeverria <recheverria@shernoff.com>

Troy,

I know that since the below email from Nick Rowley, he had a nice conversation with you and agrees you are a more than capable lawyer. I also see you are a law professor and have written on numerous issues related to the law, clients, etc and have been involved in numerous substantial appellate cases. I would like to follow up on a few things to clarify any possible conflicts of interest/loyalty you may have regarding the Clinic and its doctors. I know you have never talked with the doctors and have talked extensively with MMIC/Constellation but want to give you all the benefit of doubt. Simply put, I need to know if your loyalties are to the doctors and are not conflicted by loyalties to MMIC/Constellation. Accordingly, I have a few questions and need a complete copy of your file related to this matter.

Questions:

1. It is my understanding that MMIC/Constellation brought you into this case on the same day the verdict was rendered. Who contacted you, Nick Ghiselli or Nicole Graziano? Who have you been primarily communicating with at MMIC/Constellation regarding this case?

2. The Clinic was told that a bond would be posted. However, after you were brought in, the plan shifted, and motions were filed to avoid the posting of a bond. What role if any did you play in that change of position regarding posting a bond to protect the Clinic and its doctors? Who primarily was responsible for making that decision? How did you advocate on behalf of the Clinic and its doctors to encourage MMIC/Constellation to post or not post a bond? What is your opinion on the appropriateness of MMIC/Constellation not posting a bond or at a minimum offering the Clinic and its doctors a comfort letter? What is your stance on whether it was right for MMIC/Constellation to tell the Clinic that a bond would be posted and to hold off on settlement with the underlying plaintiff and then not post a bond later after the court ruled against MMIC/Constellation on that issue? Does promissory estoppel apply to MMIC/Constellation somehow on this issue? If not, why not? What is your best argument on behalf of the Clinic on this issue?

3. What was your position regarding whether it was in the Clinic and its doctors' best interest to file bankruptcy? How did you advocate for the Clinic and its doctors on the bankruptcy issue?

4. As appellate counsel, there are three main arguments as I see it: 1) Fieger's conduct, 2) the pamphlet, 3) whether the court did the offset correctly. Which do you believe are the strongest and weakest and why? What chances do you give that the Iowa Supreme Court will uphold the verdict in its entirety? What chances do you give that the Iowa Supreme Court will reject the arguments that neither Fieger's conduct nor the pamphlet create sufficient grounds for reversal? If no reversal on Feiger or pamphlet, what chance do you opine they will reduce the underlying verdict further on the offset issue?

5. Do you agree that MMIC/Constellation cannot put its financial interests ahead of the Clinic and its doctors? How does the fact that MMIC/Constellation refused to offer any money or even attend a settlement conference to settle this case before trial, even though MMIC/Constellation clearly could have settled within policy limits and the Clinic and the doctors were begging them to do so play into what the Clinic and doctors can do now to protect themselves? Can you please give me your best argument on behalf of the doctors and Clinic as to why it was not appropriate for MMIC/Constellation to put its financial interests ahead of the Clinic and its doctors? Can you please give me your best argument as to why the Clinic and doctors should not settle now to bring finality to this matter and protect them from ongoing litigation and future financial consequences?

6. Do you agree that the cooperation clause cannot be used by an insurer to hold its insured hostage if the insurance company has breached the insurance contract by putting its financial interests ahead of its insured? Do you agree that if this has been done, then the

insured has the right to take steps to protect themselves.

Lastly, I see you have been involved in other MMIC/Constellation cases. For example, UMIA v. Salts, and Sacred Heart v. MMIC both involved matters where you directly represented them while also representing the Clinic and its doctors in this case. How many of your appellate cases involve MMIC/Constellation? How many current active cases do you have with them or their subsidiaries whether they are your client or their insured is your client? Do you expect/would you like this line of work to continue? If so, will that be an Issue for the Clinic and the doctors? Despite your relationship with MMIC/Constellation/Nick Ghiselli do you believe you can fulfill your fiduciary duties to the Clinic and its doctors in this case?

Like Nick, I agree you are more than capable to handle this appeal assuming you are not going to be a witness down the road or your fiduciary duty is not somehow compromised by your past/current relationship with MMIC/Constellation. As you know, our interests are to protect the Clinic and its doctors. If you can help ensure that the doctors and the Clinic are fully protected and their financial interests are not compromised in anyway then I look forward to your staying on this team. I look forward to hearing form you so I can discuss your response with the Clinic and the doctors. Thanks.

Daniel B. Bidegaray