IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | | |
|---|---|---|
| MMIC INSURANCE, INC., | ) | Case No. 3:23-cv-00039-SMR-WPK |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER ON MOTION FOR |
| v. | ) | TEMPORARY RESTRAINING ORDER |
| | ) | AND PRELIMINARY INJUNCTION |
| OBSTETRIC AND GYNECOLOGIC | ) | |
| ASSOCIATES OF IOWA CITY AND | ) | |
| CORALVILLE, P.C., | ) | |
| | ) | |
| Defendant. | ) | |

The litigation history of this case is complicated and convoluted with a tragic and heartbreaking backstory. The motion now before the Court is just the latest iteration in the back-and-forth tussle between a medical clinic, an insurance company, and an Iowa family whose child suffered significant injuries during birth. A state trial court and a federal bankruptcy court have already heard issues related to this matter. It is now before the Iowa Supreme Court and this Court. The current motion asks for preliminary relief as it pertains to the proceedings before the Iowa Supreme Court.

## I.    BACKGROUND

Plaintiff MMIC Insurance Inc., ("MMIC") filed this lawsuit seeking declaratory judgment regarding the provisions of an insurance policy (the "Policy") issued to Defendant Obstetric and Gynecologic Associates of Iowa City and Coralville, P.C., (the "Clinic"). A medical malpractice lawsuit (the "State Case") was filed against the Clinic in November 2019 arising out of injuries

suffered by a child (the "State Plaintiff")[1] during birth. The State Case proceeded to a two week jury trial. The jury found liability on the part of the Clinic for medical malpractice and awarded damages of more than $97 million. Damages were reduced by the state district court to approximately $75 million after trial, still far exceeding the $12 million liability limit of the Policy.

The Clinic filed an appeal (the "Appeal") to the Iowa Supreme Court seeking review of a variety of alleged errors during the trial including jury instructions, hearsay evidence, improper division of fault, and counsel misconduct. Rather than posting a supersedeas bond, the Clinic asked the Iowa Supreme Court for an order staying execution of the judgment until resolution of the Appeal. The motion for a stay of execution was denied. Without a stay pending appeal, the State Plaintiff was entitled to seek execution of the judgment immediately.

Shortly thereafter, the Clinic filed for bankruptcy in the United States Bankruptcy Court for the Southern District of Iowa. The bankruptcy court eventually dismissed the entire action after concluding that the bankruptcy filing was improper. The Clinic initially sought review of the dismissal of the bankruptcy action in the district court ("Bankruptcy Appeal"). *See In re Obstetric and Gynecologic Assocs. of Iowa City and Coralville*, 3:22-cv-00080-SMR-SBJ (S.D. Iowa 2022). However, it decided to voluntarily dismiss the bankruptcy appeal in May 2023. The Complaint filed by MMIC in this case avers that shortly before moving to voluntarily dismiss its Bankruptcy Appeal, the Clinic privately retained Attorney Nicholas Rowley and dismissed its other counsel. [ECF No. 1 ¶ 32].

The insurance company explains that it offered to pay the policy limit of $12 million to the State Plaintiff in September 2022, pending resolution of the Appeal. *Id.* ¶ 37. Counsel for the

---

[1] The injured child, through a Conservator, was the plaintiff in the underlying state court lawsuit. To avoid a strained factual discussion, the Court will refer to the "child" as "State Plaintiff."

State Plaintiff allegedly told the insurer that the $12 million proceeds would not be returned to MMIC, even if the Appeal succeeded. *Id*. ¶¶ 38–39. According to the Complaint, MMIC eventually did issue $12 million to the State Plaintiff after dismissal of the Bankruptcy Appeal. *Id* ¶ 41.

MMIC filed this Complaint on June 5, 2023, seeking declaratory and injunctive relief based on the Policy provisions. [ECF No. 1]. Count I of the Complaint seeks a declaratory judgment that dismissal of the Appeal, interference with the Appeal, or interference with the nature of the Iowa Supreme Court's decision on the merits of the Appeal would violate the terms of the Policy. The Policy specifically requires, as the vast majority of insurance policies do, that an insured (the Clinic) cooperate with the investigation, negotiation, and litigation of any claim. [ECF No. 16-2 at 7]. In Count II, MMIC seeks injunctive relief enjoining the Clinic from dismissing the Appeal or otherwise interfering with the Appeal, along the same lines as Count I. Count III again seeks a preliminary injunction, but on an expedited basis predicated on the allegations contained in the pleadings.[2]

On November 29, 2023, MMIC filed this Motion for Preliminary Injunction and a Temporary Restraining Order on the basis of recent developments in the Appeal. [ECF No. 16]. It alleges that the Clinic has taken actions that encumbered the Appeal in front of the Iowa Supreme Court.

---

[2] Despite the inclusion of Count III in the Complaint, at no time did MMIC file a motion for a preliminary injunction. The Local Rules require that a request for court action (*i.e.*, a motion) must: (1) be in writing; (2) contain citations to all authority under which the motion is being made; (3) attach a brief to the filed motion in the same docket entry; and (4) include all affidavits, sworn materials, or other documentary evidence containing evidence on which the motion is based but not included in the record. LR 7(b). Motions for preliminary injunction and expedited relief are addressed in separate rules. *See* LR 7(i), LR 65.

On November 21, 2023, the Clinic filed a lawsuit in Johnson County, Iowa against MMIC and the law firm Shuttleworth & Ingersoll (the "Defense Attorneys") alleging claims for bad faith denial against MMIC and legal malpractice against the Defense Attorneys. *See Obstetric and Gynecologic Assocs. of Iowa City & Coralville, P.C.*, Dkt. No. LACV084850 (Iowa Dist. Ct. Johnson Cnty.); [ECF No. 16-10]. One week later, the Clinic filed a motion in the Appeal asking the Iowa Supreme Court to stay the appeal in its entirety. *S.K. v. Obstetric & Gynecologic Assocs. of Iowa City & Coralville, P.C.*, Case No. 22-1317 (Iowa Nov. 28, 2023); [ECF No. 16-9]. The motion to stay explained that the proceedings should be paused because "[c]urrent counsel-of-record for [the Clinic], the law firm of Shuttleworth & Ingersoll, will likely be withdrawing from the case due to a conflict of interest which exists that would prevent them from continuing as counsel of record in this appeal." *Id*. at 2. The conflict of interest referred to in the motion to stay, filed by Rowley, is a conflict of interest based on the legal malpractice lawsuit filed in Johnson County one week earlier by Rowley. The Iowa Supreme Court granted the motion.

MMIC alleges that the lawsuit in Johnson County and the motion to stay are part of a scheme by Rowley on behalf of the Clinic to prevent the Iowa Supreme Court from ruling on the merits of the Appeal. [ECF No. 16-1 at 3–4]. The company accuses the Clinic, and Rowley specifically, of engineering a conflict of interest for the Defense Attorneys who had represented the Clinic throughout the pendency of the State Case. This conduct amounts to "affirmative efforts to prejudice" the Appeal by intentionally disqualifying the appellate counsel selected by MMIC pursuant to the provisions of the Policy. *Id*. at 4. The company accuses the Clinic of breaching its contractual obligation to proceed with counsel chosen by MMIC during the defense of the claim. *See* [ECF No. 16-2 at 10] (providing that MMIC has "the right to control the defense of and retain an attorney to defend any claim covered by this insurance"). Furthermore, MMIC expresses

-4-

concern that Rowley has "publicly represented that he was actively attempting to settle the direct appeal without the insurer, and has irreparably put his client in a far worse position." [ECF No. 16-1 at 4]. MMIC urges that it has suffered prejudice from this alleged failure to cooperate and "breached one of the most elementary contractual obligations of any insured—cooperation." *Id*.

After MMIC's properly filed motion for preliminary injunction, the Court ordered an expedited response from the Clinic. The Clinic provides little in the way of legal analysis, responding instead with rhetorical flourish. It first rejects the allegations in the Complaint as "frivolous" and characterizes the claim of an emergency by MMIC as "disingenuous." [ECF No. 19 ¶¶ 1–2]. The frivolity of MMIC's legal claims, according to the Clinic, are demonstrated by its "bad faith conduct" which will "shock" the conscience of the Court when it is revealed. *Id*. ¶ 1. The Clinic maintains that no emergency exists because the Appeal is stayed, which by definition means nothing occurs in the case. *Id*. ¶ 2. The Clinic denies that the legal malpractice lawsuit filed against the Defense Attorneys was intended to manufacture a conflict of interest and asserts the claims rest on a solid factual and legal basis. Addressing the issue of the specific attorney chosen by MMIC to represent it in the Appeal—Attorney Troy L. Booher—the Clinic acknowledges that he is a "very qualified lawyer" but, in part because he is a *pro hac vice* counsel, "[t]he Clinic and its physicians did not even know Mr. Booher was a licensed Iowa lawyer." *Id*. ¶ 8. It also expresses concern that Booher has represented MMIC, or its insureds, in previous cases.

The Clinic represents that Rowley and Attorney Daniel Bidegaray have been in communication with Booher regarding his loyalty to their client. *Id*. ¶ 9. Email correspondence with Booher has been attached to the response. In the email correspondence, Booher responds to

an extensive set of questions asked by Bidegaray regarding any conflict of interests.[3] The Clinic speculates that Booher is a "key witness" in the bad faith case against MMIC in part because he represented the insurer "in other cases where physicians sued MMIC." *Id*. ¶ 14. It details other alleged shortcomings in legal strategy by Booher, including not advising the Clinic to sue MMIC or "tell[ing] them that they have rights beyond that which the insurer is telling them they have." *Id*. Furthermore, the Clinic advises that it has had zero communications with Booher, so it is unsure whether it feels "confident in Mr. Booher's representation." *Id*.

The Clinic contends that its good faith can be demonstrated by Booher's estimation of the probability of success in the Appeal. Booher explains there is a good chance that the Iowa Supreme Court will order a new trial, which he says is a more likely outcome than Iowa's high court affirming the judgment in full. [ECF No. 19-2 at 3]. The Clinic takes issue with the lack of certainty in Booher's prediction, averring that the "right thing to do" is stay the Appeal "to continue negotiations and get to a point where this case can be fully litigated or where a proposed settlement agreement can be presented to this Court, to the Iowa State Court or the Iowa Supreme Court."[4] [ECF No. 19-1 ¶ 16}.

The proposed remedies sought by MMIC are sweeping. It requests the Court: (1) order that Booher may continue representing the Clinic in the Appeal pursuant to the Policy terms; (2) order the Clinic to withdraw the motion to stay filed in the Appeal; (3) enjoin Rowley from

---

[3] The Court is troubled by the inclusion of apparent attorney work product in the attached email, which reflects Booher's impression about the strength of specific issues in the Appeal. Given that Bidegaray and Booher both represent the same client (the Clinic) this would ordinarily not be appropriate for a public filing, particularly where it is not apparent the Booher understood that his conversation would be disclosed by his co-counsel.

[4] The Clinic does not explain why any settlement would be presented to this Court. The question in this case is whether the Clinic has breached its obligation under the Policy.

representing the Clinic or enjoin his representation in the Appeal; (4) enjoin any further efforts to prejudice the Appeal and rights of MMIC; (5) enjoin *ex parte* settlement negotiations between the Clinic and the State Plaintiff; and (6) declare the policy has been violated by the Clinic. Alternatively, MMIC suggests that the Court should declare the policy proceeds may be restituted to MMIC from the Clinic and the Policy is void *ab initio*.

## II.  DISCUSSION

### A.  *Legal Standard*

MMIC seeks a temporary restraining order, or preliminary injunction, either of which "is an extraordinary remedy never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted).  A court order issuing preliminary relief to a movant serves the purpose of preserving the relative positions of the parties until a trial on the merits can be held. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).  A district court has broad discretion when deciding a motion for a preliminary injunction. *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998) (citations omitted).  The decision of a district court on a request for a preliminary injunction is reviewed for clearly erroneous fact determinations, errors of law, or abuse of discretion. *Id*.

The movant bears the burden of "establishing the propriety of an injunction." *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 699 (8th Cir. 2021) (citation omitted); *see also H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 946 (8th Cir. 2023) ("A plaintiff seeking a preliminary injunction bears the burden of showing that such extraordinary relief is warranted.") (citation omitted).  The United States Court of Appeals for the Eighth Circuit "has repeatedly recognized that the purpose of injunctive relief is to preserve the status quo; it is not to give the movant the ultimate relief he seeks." *Lindell v. United States*, 82 F.4th 614, 618 (8th Cir. 2023).

When determining whether a movant is entitled to relief on a preliminary basis, a court weighs four factors: (1) probability or likelihood of success on the merits of the claim; (2) the threat of irreparable harm absent preliminary relief; (3) the balance of equities, weighing the harm suffered by the movant against the harm to the non-moving party that would result from issuing an injunction; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). Balancing these "*Dataphase* factors" is not a "rigid formula." *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir. 1999). Rather, courts must "flexibly weigh the case's particular circumstances to determine 'whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.'" *Calvin Klein Cosms. Corp. v. Lenox Labs, Inc.*, 815 F.2d 500, 503 (8th Cir. 1987) (quoting *Dataphase*, 640 F.2d at 113). No one factor is determinative, and MMIC bears the burden of showing the balance of these factors weigh in favor of issuing the injunction.

### B. Analysis

The Clinic does not address all the factors for a preliminary injunction in its response. Accordingly, the Court will deem those factors waived by the Clinic and they will not be addressed in this Order.[5] However, the Court concludes that MMIC fails to establish it will suffer irreparable harm without the requested injunction. The harms asserted by MMIC are not irreparable. *See Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016) (holding "[i]t is well established that irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages.") (cleaned up) (citation omitted). To the extent that any of the injuries posited by the company are irreparable, it

---

[5] Findings of fact and conclusions of law on a preliminary injunction motion are not binding. *Patterson v. Masem*, 774 F.2d 251, 254 (8th Cir. 1985); *see also United States Sec. and Exch. Comm'n v. Zahareas*, 272 F.3d 1102, 1105 (8th Cir. 2001).

has not demonstrated that they are more than a possibility. *See Morehouse Enters., LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 74 F.4th 1011, 1018 (8th Cir. 2023) (concluding that harm "must be actual and not theoretical") (citation omitted). Some of the injuries offered by MMIC do not appear to even be legally cognizable.

### 1.  Irreparable Harm

It is an independently sufficient basis to deny a preliminary injunction if the movant fails to show irreparable harm. *Sessler v. City of Davenport*, 990 F.3d 1150, 1156 (8th Cir. 2021) (citation omitted); *see also Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) ("When there is an adequate remedy at law, a preliminary injunction is not appropriate."). The inquiry into whether a party will suffer irreparable harm is independent of the assessment into the merits of the claims. *General Motors Corp. v. Harry Brown's LLC*, 563 F.3d 312, 318 (8th Cir. 2009) (holding the "[r]egardless of the strength of its claim on the merits, a movant for a preliminary injunction should show a threat of irreparable harm").

As noted earlier, injunctive relief requires a movant to show that, without an injunction, irreparable harm is likely, not simply possible. *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022). Irreparable harm is when "a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Rogers Grp., Inc. v. City of Fayetteville*, 629 F.3d 784, 789 (8th Cir. 2010) (citation omitted); *see also Bandag, Inc.*, 190 F.3d at 926 ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.") (cleaned up) (citation omitted).

MMIC urges that it will be irreparably harmed without a preliminary injunction. It contends that it will suffer monetary and non-monetary damages if the conduct of the Clinic and Rowley continue without the Court's intervention. As to its assertion of monetary damages, such

claims will rarely constitute irreparable harm for purposes of a preliminary injunction. *See Packard Elevator v. ICC*, 782 F.2d 112, 115 (8th Cir. 1986) (holding that it is well-established that "economic loss does not, in and of itself, constitute irreparable harm"). The company sets forth multiple examples of what it claims to be non-monetary, irreparable damages, but the Court is unpersuaded.

The first is a claim that MMIC's goodwill and reputation will suffer. Courts have sometimes found that irreparable harm is present if the movant establishes that it risks reputational harm or loss of goodwill with consumers without preliminary relief. *See Kroupa v. Nielsen*, 731 F.3d 813, 820 (8th Cir. 2013) (holding that "damage to one's reputation is a harm that cannot be remedied by a later award of money damages" may serve a basis for preliminary injunctive relief); *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 426 (8th Cir. 1996); *accord Harry Brown's*, 563 F.3d at 319–20 (affirming denial of a preliminary injunction after a movant grounded irreparable harm claim solely on "general business principles").

"'Goodwill' is defined as a business's reputation, patronage, and other intangible assets that are considered when appraising the business; the ability to earn income in excess of the income that would be expected from the business viewed as a mere collection of assets." *Mercy Health Services-Inc. v. Efstratiadis*, 579 F. Supp. 3d 1096, 1104 (N.D. Iowa 2022) (cleaned up) (citation omitted). Similarly, a business's reputation is "the public's evaluation of and regard for the quality of a company's goods or services." *Id*. at 1106 (citation omitted).

MMIC cites two cases from the Eighth Circuit recognizing that a loss of intangible assets such as reputation and goodwill can constitute irreparable injury. Neither case supports the company's claims here.

The first case pertained to a preliminary injunction granted by a district court in favor of United Healthcare Insurance Company and the American Association of Retired Persons ("AARP") on allegations of deceptive trade practices and other common law claims. *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 739 (8th Cir. 2002). The defendant in that case, AdvancePCS, was a pharmacy benefit management company which would maintain a prescription history for participants in an AARP program and would "check for adverse drug interactions as part of a Drug Utilization Review (DUR) each time that it processed a drug discount claim." *Id*. at 740. On appeal, AdvancePCS argued that the district court erred when it found that AARP was threatened with irreparable harm in the absence of an injunction. The panel pointed out that the program issued drug discount cards with the AARP logo, AARP program code numbers, and other information reflecting AARP's participation. *Id*. Pharmacies would utilize a program participant's AARP program code number when requesting a drug discount. *Id*.

UnitedHealth Group, Inc. later managed pharmacy services for AARP, choosing to terminate AdvancePCS in favor of a different pharmacy benefit manager. *Id*. In response, AdvancePCS launched its own drug discount program and would process any claim for a drug discount it received from a participating pharmacy, which included claims from the already-stored AARP patient profiles. *Id*. at 740–41. AdvancePCS would not notify the patient that it had processed the claim rather than AARP. This led to discrepancies because the new pharmacy benefit manager for AARP, ExpressScripts, was not aware of the prescriptions for a patient if AdvancePCS had processed the prescription, and vice versa. *Id*. at 741. Without a full prescription history for a patient, the risk of adverse drug reactions was heightened.

The district court enjoined AdvancePCS from processing drug claims for AARP participants after concluding that "an adverse drug reaction resulting from an incomplete DUR

might irreparably harm AARP's reputation and goodwill among its members." *Id*. The district court reasoned that there was no way for AARP members to know that AdvancePCS had processed the claim so the members would "reasonably be expected to attribute shortcomings in their prescription history to AARP." *Id*.

The Eighth Circuit affirmed the preliminary injunction on appeal. Recognizing that irreparable harm can result from the loss of "intangible assets such as reputation and goodwill," the court found that AARP faced a threat of irreparable harm if AdvancePCS continued to process claims for its members. *Id*. In essence, the panel agreed with the district court that AARP could suffer irreparable harm due to consumer confusion regarding who would be responsible for adverse drug reactions.

The other case which MMIC relies upon for loss of goodwill and reputation is equally inapposite. In that case, the Eighth Circuit concluded that a district court did not clearly err in finding a threat of irreparable harm after a pharmacy changed its name following an accusation by a franchisor of underreporting revenues. *Medicine Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003). The panel agreed that "de-identification of the pharmacy" with its franchisor brand could create "consumer confusion" and erode "consumer confidence" in the network of franchises. The court added that "the closure of one franchise may make customers wonder whether other Medicine Shoppe franchises will continue to operate in the future." *Id*.

MMIC has not presented a similar factual circumstance and does not provide a satisfactory explanation why its reputation or goodwill is likely to be harmed without an injunction. It first claims that its three principal contractual and common law rights as an insurer—right to control the defense, select counsel, and control settlement—are intangible benefits that will be irreparably harmed if the Clinic's actions are not enjoined. [ECF No. 20 at 5]. As MMIC correctly points

out, these are all very common provisions in an insurance contract and are rights recognized under Iowa common law. *See Wells Dairy, Inc. v. Travelers Indem. Co. of Ill.*, 266 F. Supp. 2d 964, 967 (N.D. Iowa 2003) (recognizing that an insurer generally has authority over the defense of a claim and its settlement under Iowa law). MMIC essentially takes the position that the breach of an insurance policy causes irreparable harm to an insurer which entitles it to seek an "extraordinary and drastic remedy" of a preliminary injunction from a federal court. *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (citation omitted). Although the company presents evidence that the Clinic is not complying with the terms of the Policy, that does not constitute irreparable harm by itself. A request for a preliminary injunction requires a more rigorous showing than MMIC's conclusory statement that it will suffer irreparable harm without one. *See Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (finding that "[t]o succeed in demonstrating a threat of irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief.") (cleaned up) (citation omitted).

The other bases for irreparable harm offered by MMIC are novel but do not satisfy its burden. One asserted ground is the company says its inability to pursue an appeal will result in the loss of "vindication for Dr. Goodman, MMIC, and the defense attorneys in the case." [ECF No. 16-1 at 10]. It is unclear what "vindication" means regarding the asserted trial errors on appeal. There is no explanation why MMIC has a contractual right to vindicate Dr. Goodman or the Defense Attorneys. It also does not discuss how the vindication of an insurance company and its hired attorneys is a legally cognizable remedy to a breach of contract either.

In its Reply brief, MMIC offers other irreparable harms. It argues that the evolution of medical malpractice law in Iowa "are intangible rights the Clinic's conduct seeks to deprive MMIC, including the Iowa Supreme Court clarifying important aspects on appeal and any retrial."

[ECF No. 20 at 5]. Again, MMIC makes no attempt to establish its contractual right to the evolution of medical malpractice law in Iowa, or how a failure to obtain an injunction here would irreparably harm the company.

The company also maintains that a stay in the Appeal, or other interference tactics, will prejudice its rights in seeking an opportunity for a retrial. Finally, MMIC contends that its "goodwill and reputation is prejudiced by its inability to litigate the appeal and the Clinic/Attorney Rowley's public statements."[6] [ECF No. 20 at 5–6]. Along with its similar claims for intangible harm, the insurer provides no basis why an inability to litigate the Appeal would result in harm to its reputation and goodwill. A plaintiff alleging harm on the basis still must establish that irreparable harm will likely occur. *Efstratiadis*, 579 F. Supp. 3d at 1107. MMIC provides only speculative argument in support of its claims. *See S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 779 (8th Cir. 2012) ("Speculative harm does not support a preliminary injunction.").

MMIC has not presented a valid basis to conclude that it would suffer irreparable harm in the absence of its requested relief. The company identifies multiple bases why it believes that monetary damages cannot address its intangible contractual rights. However, "intangible contract rights" are not the same as the "intangible assets" which courts have recognized can constitute irreparable harm. *See AdvancePCS*, 316 F.3d at 741 ("Loss of intangible assets such as reputation and goodwill can constituted irreparable injury"). Many rights under a contract are "intangible."

_____

[6] It also asserts that it would be a bad precedent to permits insureds to "flaunt" violations of their insurance policy, which MMIC has an interest in avoiding. The Court agrees that it would be unwise for parties to a contract to "flaunt" any breach of contract. To the extent that MMIC is arguing that conspicuous violations of insurance policies will result to more policy violations by other insureds, the claim is rejected as a grounds for injunctive relief.

But a party does not establish irreparable harm on the basis that a breach of contract entailed rights which are not tangible.[7]

The Clinic has an insurance policy with MMIC which, in exchange for indemnity for certain liability claims, it agreed to allow the insurer to control the defense of the claim, select counsel for the defense of the claim, and control the settlement of the claim. MMIC has presented evidence that the Clinic has not complied with its contractual obligations. However, it has not established that it "has no adequate remedy at law" without preliminary injunctive relief. Allegations that a party breached a contract "does not, in and of itself, entail irreparable harm." *General Motors LLC v. KAR Auto Grp. of Decorah, Inc.*, No. 20-CV-2039-CJW-KEM, 2020 WL 4937119, at *6 (N.D. Iowa Aug. 24, 2020) (citation omitted). Even a provision in a contract which expressly states that a breach constitutes irreparable harm is not sufficient on its own. *See Minnesota Vikings Football Stadium, LLC v. Wells Fargo Bank*, 157 F. Supp. 3d 834, 841 (D. Minn. 2016) (noting that such a provision "lends weight" to a claim for irreparable harm but does not establish the factor). Failure to show irreparable harm is an "independently sufficient ground upon which to deny a preliminary injunction." *Lewis*, 346 F.3d at 844. That is the basis on which the Court will deny MMIC's motion for a temporary restraining order and preliminary injunction here.[8]

---

[7] MMIC cites to an Iowa Supreme Court case that held "belated offers" by an insured to comply with policy provisions cannot remedy a breach under certain circumstances. The company seeks injunctive relief currently, thus the Court does not opine on whether any breach by the Clinic can be remedied.

[8] MMIC asks in the alternative for the Court to declare the Policy void and declare that the policy proceeds may be restituted to MMIC for its breach. Given that this Motion was brought pursuant to Rule 65 of the Federal Rules of Civil Procedure, this is a procedurally improper request.

### III.    CONCLUSION

For the reasons discussed above, the Motion for Temporary Restraining Order and Preliminary Injunction is DENIED.  [ECF No. 16].

IT IS SO ORDERED.

Dated this 20th day of December, 2023.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT