IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DISTRICT

| | |
|---|---|
| MMIC INSURANCE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>OBSTETRIC AND GYNECOLOGIC ASSOCIATES OF IOWA CITY AND CORALVILLE, P.C.,<br><br>Defendant,<br><br>THOMAS T. TARBOX, on behalf of S.K.,<br><br>Intervenor. | CASE NO. 3:23-cv-00039-SMR-SBJ<br><br>**PLAINTIFF'S RESISTANCE TO MOTION TO STAY ENFORCEMENT OF DECLARATORY JUDGMENT** |

MMIC Insurance, Inc. ("MMIC"), by and through the undersigned counsel, per L.R. 7(e), hereby submits its Resistance to Defendant's Motion to Stay Declaratory Judgment (Doc. # 92).

**Introduction**

A voided insurance policy confers no duties on a liability insurer, but it also strips the insurer's *right* to participate in the defense of an insured. The Clinic's conduct, by and through Attorney Rowley and otherwise, precipitated this very result. Without disputing any material facts, without advancing *any* facts of their own in this summary judgment record, and without rebutting the presumption of prejudice (let alone the actual prejudice found by the Court), the Clinic has no right to stay enforcement of the declaratory judgment. If anything, the Clinic's ask should be (and has been) presented to the underlying merits court. At bottom, this Court certainly has no "duty" to stay its declaration. *Cf.* Doc. # 92-1, at 1.

## Procedural History

The Court is familiar with this matter. On March 31, 2025, the Court entered an order granting MMIC's Motion for Summary Judgment, and entering judgment in favor of Plaintiff. *See* Doc. # 89 (Order); Doc. # 90 (Judgment). After decrying the terms of the Policy throughout the entire litigation, the Clinic now files a motion to stay (Doc. # 92), attempting to bind MMIC to voided terms of that very Policy. For the reasons contained herein, the Motion's 'not for me, but for thee' approach should be summarily denied.

## Legal Standards

"'A stay is not a matter of right, even if irreparable injury might otherwise result' but instead is 'an exercise of judicial discretion.'" *Kansas v. United States*, 124 F.4th 529, 533 (8th Cir. 2024) (per curiam) (quoting *Nken v. Holder*, 556 U.S. 418, 433 (2009)). Courts around the country are instructed to reject requests, like this one, to "reflexively hold[] a final order in abeyance pending review." *Nken*, 556 U.S. at 427.

## Argument

The equities do not balance in the Clinic's favor on this extraordinary ask. In fact, each proposed factor weighs in favor of denying the relief sought and will be addressed in turn. Finally, the proposed misconstruction of the hearing transcript—whether intentional or not—should not be indulged.

**I.     This is not one of those "unusual circumstances" where the Court should exercise its discretion to grant a stay.**

Federal courts are given the discretion to enter a stay of its judgment by the movant/appellant posting a supersedeas bond or other security. *See* FED. R. CIV. P. 62(b). The Clinic appears not to offer that here. Alternatively, injunctions may be stayed in the Court's

discretion, pursuant to either FED. R. CIV. P. 62(d) or FED. R. APP. P. 8(a). The Clinic argues, however, that "this matter involves a declaratory judgment *rather than an injunction*." Doc. # 92-1, at 3 (emphasis supplied). Accordingly, unsecured stays of this nature remain discretionary but are "reserved for 'unusual circumstances.'" *Bolt v. Merrimack Pham., Inc.*, No. S-04-0893 WBS DAD, 2005 WL 2298423, at *2 (E.D. Cal. Sept. 20, 2005) (quoting *Fed. Prescription Serv., Inc. v. Am. Pham. Ass'n*, 636 F.2d 755, 760 (D.C. Cir. 1980)).

As to the merits of such a request, however, and "[u]nder both Rules [62 and 8]…the factors regulating the issuance of a stay are generally the same." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Those factors are:

- Likelihood of success on the merits of the appeal;
- Irreparable injury to movant;
- Possibility of substantial injury to non-moving party; and
- The public interest.

*Id.* Notably absent from *Hilton*'s formulation, of course, is blind preservation of the "status quo."

On each of these factors, the movant bears the burden of proof. *James River Flood Control Ass'n v. Watt*, 680 F.2d 543, 544 (8th Cir. 1982). The likelihood of success on the merits is "[t]he most important factor," but "a showing of irreparable injury without a stay is also required." *Brakebill v. Jaeger*, 905 F.3d 553, 557 (8th Cir. 2018).

## II. The Clinic is unlikely to succeed on the merits (Factor 1).

Courts have found the likelihood of success on the merits of the appeal (*Hilton* factor 1) to be the most important factor. *Id.* But it requires a "strong showing," one not met by merely asserting a "better than negligible" or "mere possibility" of appellate success. *Nken*, 556 U.S. at

434. The Court's comprehensive Order fully treats why the judgment it entered was warranted on the record. Indeed, where the movant provides only inapplicable, unpersuasive—and certainly nonbinding—authority to support its ask, motions for stay are properly denied. *S & M Constructors, Inc. v. Foley Co.*, 959 F.2d 97, 98 (8th Cir. 1992). Here, the Clinic's circumstance is in even worse shape to secure a reversal.

*First*, every material fact on the summary judgment record was admitted. *See* Doc. # 27-2.[1] Relatedly, the Clinic did not file any statement of disputed facts. *See* FED. R. CIV. P. 56(e); L.R. 56(b)(3). Summary judgment is appropriate when, as there was here, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); Doc. # 89, at 1 ("The factual record, largely undisputed, allows for a definitive resolution of the matter.").

*Second*, on that undisputed record, the Clinic misstates what it deems was "the central question at issue here." *See* Doc. # 92-1, at 5. The issue has always been whether the Clinic breached the insuring agreement. *E.g.*, Doc. # 21, at 6 n.4 ("The question in this case is whether the Clinic has breached its obligation under the Policy."); Doc. # 89, at 16 ("At issue in this case are several provisions of the Policy that MMIC contends the Clinic violated."). The Clinic advances no argument—let alone authority—that the insurance agreement was incorrectly interpreted. Nor could it.

---

[1] The only outright denial to MMIC's statement of undisputed facts related to whether Attorney Rowley remained counsel of record for the Clinic on the ultimately meritorious appeal. *See* Doc. # 22-2. At 8 ¶ 41. The Court could have taken judicial notice of the (lack of) veracity of the Clinic's denial, even if it were material (it was not).

*Third*, the Clinic continues to insist on contorting this action to something it is not. This case could not be about bad faith because that claim was never raised. In fact, it was the Clinic itself which, on the very summary judgment motion affording MMIC relief, decried the applicability of *Kelly v. Iowa Mut. Ins. Co.*, 620 N.W.2d 637 (Iowa 2000), the very case the Clinic now wants this case to be about. *See* Doc. # 27-1, at 15 ("[T]his Court need not resolve that question at this time."). Regardless, neither argument aids it.

*Fourth*, and even on the merits, through careful excerpting and convenient ellipses, the Clinic argues its out-of-jurisdiction authorities must move the needle in interpreting *Kelly*. They do not. MMIC need not disambiguate those same authorities again. *See* Doc. # 57, at 14–20. Suffice to say, each relates to a discrete circumstance (like *Kelly*)[2] wherein the insurer leverages an erroneous 'no coverage' determination to reject settlement. Doc. # 89, at 23 (finding *Kelly* "addressed circumstances where an insurer's refusal to settle was predicated on an erroneous coverage position"). That is not this case. *See, e.g.*, Doc. # 9 (Clinic's Answer), at 2 ¶ 2 ("Defendant concurs that MMIC/Constellation did not defend the underlying case under a reservation of rights….").

*Fifth*, this case began when Attorney Rowley claimed he would proceed with "unprecedented motions." Doc. # 1-1, at 2. That claim by Attorney Rowley is noteworthy. The Clinic knows its ask to follow *Kelly* (now) is inapposite to that original claim, especially when it

---

[2] And like its predecessor *Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524 (Iowa 1995), and cases interpreting the same such as *Talen v. Emps. Mut. Cas. Co.*, 703 N.W.2d 395, 408 (Iowa 2005); *Wells Dairy, Inc. v. Travelers Indem. Co. of Ill.*, 266 F. Supp. 2d 964, 968 (N.D. Iowa 2003), and other Eighth Circuit authority with identical roots like *Miller v. Shugart*, 316 N.W.2d 729, 735 (Minn. 1982); *Am. Fam. Mut. Ins. Co. v. Donaldson*, 820 F.3d 374, 379 (8th Cir. 2016); *James River Ins. Co. v. Interlachen Propertyowners Ass'n*, 682 Fed. App'x 542, 543 (8th Cir. 2017).

decried *Kelly after* the claim for "unprecedented motions" but *before* it has adopted its more recent approach to *Kelly*. Regardless, to the extent Attorney Rowley's original claim is credited, then it cannot also be credited that this Court acted inapposite to existing Iowa law. Simply put, Attorney Rowley's own words precipitating this declaratory judgment matter are indicia that this case is not likely to be reversed on appeal. *See id*.

*Sixth*, the Clinic ignores key provisions on which this Court's order was premised in its Motion. As an example, it is not enough to say no settlement was ever "consummated" when "[t]he Policy explicitly limits the Clinic's authority to *engage in settlement negotiations* independent of MMIC." *Compare* Doc. # 92-1, at 6 (Clinic's Brief), *with* Doc. # 89, at 20 (Order) (emphasis supplied).

*Seventh*, prejudice is presumed. *Am. Guar. & Liab. Ins. Co. v. Chandler Mfg. Co.*, 467 N.W.2d 226, 228–29 (Iowa 1991). As above, the Clinic offered nothing in the record to rebut it.

*Eighth*, the Clinic makes no effort to explain why this Court's finding of *actual* prejudice could be impeached.[3] That is no way to carry a burden on this Motion where the relief sought is extraordinary.

In short, the Clinic is unlikely to successfully appeal this Court's thoughtful order assessing the interpretation of a contract (matter of law) on an undisputed record (no issue of fact). FED. R. CIV. P. 56(a).

This predominant factor is an initial, and independent basis to deny the Motion to Stay.

---

[3] The Clinic also omits that among all the other prejudices patently in this record, MMIC also lost substantial interest on the policy proceeds because of the Clinic's delays.

### III. The Clinic's speculative injuries are not "irreparable" under Circuit precedent (Factor 2).

The *Hilton* Test (and the *Dataphase* preliminary injunction test) are clear in differentiating the standards under which the parties' respective claimed injuries are to be analyzed. As to the movant (the Clinic), the injury must be "*irreparable*." "It is well established that 'irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages.'" *Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016) (quoting *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009)). The claimed injury must also be "actual and not theoretical." *Morehouse Enters., LLC v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 78 F.4th 1011, 1018 (8th Cir. 2023) (quoting *Packard Elevator v. ICC*, 782 F.2d 112, 115 (8th Cir. 1986)). It must also be "imminent." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989). And, the Clinic concedes that "economic loss does not, in and of itself, constitute irreparable harm." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough." (internal quotation omitted)).

Here, the Clinic's claims of irreparable injury fall far short of actual harm. Indeed, the Clinic argues only that it "will be completely deprived of a defense in the [retrial]." Doc. # 92-1, at 6. It relatedly—but speculatively—contends that it "will be forced to settle" the merits case "on extremely unfavorable terms." *Id.* This Court has heard that before.[4]

---

[4] *See* Doc. # 9 (Clinic's Answer), at 14 ¶ 50 ("The Clinic wants to have the freedom to explore settlement…."); Doc. # 43 (Clinic's Sealed Responses to Court's Questions), at 4 ("[T]he Clinic would *prefer* cooperating with MMIC instead of being forced to [settle]…."), 5 ("MMIC's conduct made it necessary to pursue settlement without its approval….").

*First*, and most importantly, it is the Clinic's personal counsel once again to blame for the speculative threat it tries to now push onto MMIC. If the Clinic were to become subject to "unfavorable [settlement] terms," it will be because it agreed through Attorney Rowley that a $47 million agreement was somehow "fair" here. *See* Doc. # 54, at 8 (calling the reduction of $75 million award to $47 million "fair"); *see also* Doc. # 32-1 (settlement agreement).[5] Stated differently, the law does not (and should not) support the Clinic's argument that the precise conduct which voided the Policy in the first place may also serve as the harm so as to justify a stay. That the Clinic now very much takes issue with the fairness of that agreement is nothing more than a concession of its own prior improprieties.

*Second*, and notwithstanding its inability to accept fault for the consequences of its selected counsel's actions, the Clinic has counsel defending it in this case and prosecuting the very appeal. Of course, it is more than a little ironic that the Clinic now wants a defense. That is compounded given the amount of time that its current counsel represented it as sole counsel of record at the Iowa Supreme Court. It is difficult to say that the inability to secure defense counsel is an actual injury at all, when it has retained defense counsel here (who presumably will also act as appellate counsel). Why can the counsel it retained for this case and the MSJ appeal not defend the new trial in Johnson County?

*Third*, and relatedly, it is axiomatic that there is no right to counsel in civil cases. *E.g.*, *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 386 n.15 (1979) ("[T]he Sixth Amendment does not speak in terms of civil cases at all…."); *Alexander v. Macoubrie*, 982 F.2d 307, 308 (8th Cir. 1992)

---

[5] Of course, this is the same agreement under which Attorney Rowley was to be afforded a portion of the insurance policy proceeds. *Id.* at 6 ¶ 37.

(per curiam) ("Alexander does not have an absolute right to counsel in a civil case…."). The Clinic offers no authority to demonstrate that its economic injury is anything but recuperable sums.

*Fourth*, even if there was to be an injury in funding a defense—for which it is neither by law obligated to have and for which, as a matter of fact, the Clinic has been able to secure some counsel—it would not be irreparable. In fact, Iowa law holds that in the circumstance a coverage decision is appealed and reversed, reasonable attorney fees from the underlying defense would need to be restituted to the insured. *United Fire & Cas. Co. v. Shelly Funeral Home, Inc.*, 642 N.W.2d 648, 659 (Iowa 2002) (awarding attorney fees to insured after insurer withdrew from the defense of the underlying case following summary judgment granted in the insurer's favor on coverage). Accordingly, the speculative injury—strictly economic in its own right—would also be remediable. Under Circuit precedent, that fact precludes a finding of irreparability. *Grasso Enters.*, 809 F.3d at 1040 (holding injuries are irreparable only when they "cannot be fully compensated through an award of damages").

*Fifth*, perhaps the better source of relief is not from this Court. The Clinic simultaneously filed a motion to stay in the underlying action. *See* (D0707), *S.K. v. Obstetrics & Gynecologic Assocs. of Iowa City & Coralville, P.C.*, No. LACV081421 (Iowa Dist. Ct. Polk Cty. Apr. 15, 2025). To do so, the Clinic directed MMIC's gratuitously offered retained-defense counsel to draft and file the request. This Court need not involve itself there.

In short, because "irreparable harm" is a mandatory showing on the Clinic's requested relief, and the Clinic is unable to so demonstrate, the Motion must be denied.

## IV. MMIC would be subject to "substantial injury" (factor 3).

As an initial matter, because the first two factors cannot be demonstrated to any degree—let alone to the high burden controlling this extraordinary remedy—the Motion can be denied without needing to arrive at the harms a stay would cause. *See Nken*, 556 U.S. at 425 ("*Once an applicant satisfies the first two factors*, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest." (emphasis supplied)). The first two factors remain unsatisfied on this record.

Assuming *arguendo* the Court were to reach the merits of the final two *Hilton* factors (it need not), they weigh heavily in MMIC's favor. By contrast to the heightened, mandatory "irreparable injury" showing for the Clinic, the nonmovant (MMIC) need only we subject to the possibility of a "substantial injury" for the third *Hilton* factor to fall in its favor. This is not such an exacting standard. *E.g.*, *Curley v. Adams Creek Assocs.*, No. 4:08-CV-21-H, 2010 WL 4065484, at *5 (E.D.N.C. Oct. 15, 2010) ("Though any additional delay that Defendants face if forced to wait until Plaintiff has exhausted her appeals…may be slight compared to what they have already endured, it is additional unwarranted delay nonetheless."). Indeed, economic harm constitutes a "substantial injury" under this lesser standard. Accordingly, even if the analysis progressed to the third factor (it need not), the Clinic will be unable to demonstrate the balance of justice tips in their favor at all—let alone sharply.

*First*, as an initial matter, the Clinic acknowledges MMIC would suffer economic injury. *See* Doc. # 92-1, at 7 ("It is true that the insurance company would be forced to continue paying for a defense during the pendency of the appeal."). More importantly, however, where reversal might require MMIC to restitute reasonable attorney fees to the insured's defense in the event this

Court is reversed, the Clinic can provide no assurance that it would refund the same when this Court is affirmed. This one-way street (where MMIC pays attorney fees to the Clinic, but the Clinic never reimburses unnecessary defense costs incurred due to a stay) is particularly problematic on this balance. This is perhaps why unsecured motions to stay, like this one, are routinely rejected. Further, S.K. has rejected the notion it restitute the interest on the $12 million policy proceeds which accrued because of the Clinic's delays. *See* Exhibit 2. MMIC can never be made whole, and the Clinic wants to dig that hole further. This Court should not indulge the unsupported ask.

*Second*, even with the threat of the pending declaratory judgment action, the Clinic—by and through Attorney Rowley—flagrantly violated MMIC's rights and the defense of the merits litigation with impunity. What evidence has the Clinic offered that it would accord itself differently this time around? The Clinic has provided none. Even if it had, could we even trust that evidence? *See also* MSJ Tr., at 30:18–19 ("It's a false statement to me.").

*Third*, Attorney Rowley has prohibited all communication to the insured but through him. *See* Exhibit 2. Of course, this would deprive the party paying for the defense (MMIC) of communication with the insured defendants.

*Fourth*, this Court is familiar with the agreement MMIC entered with S.K. to make available Dr. Goodman's policy limits (same policy) in exchange for her dismissal from the first trial. Currently before the Johnson County court, both S.K. and the Clinic are attempting to unwind that agreement and allow S.K. to re-assert the same claim against Dr. Goodman.[6] This is simply further

---

[6] S.K.'s Motion before this Court (Doc. # 93) is simply further evidence of that gamesmanship. S.K. specifically tells this Court he wants to disregard its Order and bring his own suit on the Policy

evidence of S.K.'s and the Clinic's collusion. MMIC was already shackled with the consequences of S.K.'s and the Clinic's collusive conduct. *See also Sargent v. Johnson*, 551 F.2d 221, 232 (8th Cir. 1977) (recognizing this conduct "represents the antithesis of mutual respect for rights"). Despite this Court's Order, the Clinic and S.K. are, once more, engaged in the same conduct. Requiring MMIC to defend these claims and rebuff this collusion yet again is substantially injurious.

Finally, is MMIC expected to tolerate unfounded legal malpractice actions against its newly-selected counsel? Will the Clinic be able to cherry-pick which parts of the insurance policy it wants to enforce given the exigency of the day? Up to this point, the Clinic acted as if there was no policy to speak of or be bound by, and now it wants the policy to be reinstated? This was a calculated scheme designed to punish MMIC and cement an erroneous verdict for ulterior motives. On balance, this extensive record of egregious conduct does not weigh in the Clinic's favor.

Attorney Rowley's conduct has prejudiced MMIC already. That it also may result in injury to his own clients is not MMIC's burden to bear any longer. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.").

## V. Public interest does not weigh in favor of the bad actors (factor 4).

The Clinic cites no authority that public interest weighs in its favor to meet its burden. Nor could it. Public policy is rarely invoked to override an otherwise unambiguous insurance policy. *See, e.g.*, *Russell v. Clapp*, 201 S.W.3d 99, 103 (Mo. App. 2006). Indeed, longstanding Iowa public

---

this Court has voided. That Motion will be responded to in due course consistent with the time allotted by L.R. 7(e).

policy recognizes "[t]he purpose of a cooperation clause is to protect insurers and prevent collusion between insureds and injured parties." *Chandler Mfg. Co.*, 467 N.W.2d at 229.

The law simply does not hold that an insured who colluded with the injured party to interfere with a direct appeal which would be to its benefit, deprived the insurer of all material rights under the insuring agreement, perpetuated repeated falsehoods before this Honorable Court, and actively and intentionally undermined the defense of the merits case is entitled to a finding of public interest in its favor. *See, e.g.*, *Sargent*, 551 F.2d at 232; *Laster v. Am. Nat'l Fire Ins. Co.*, 775 F. Supp. 985, 999 (N.D. Tex. 1991). Of course, and as this Court well knows, *Kelly* is no source of absolution on this record where "MMIC undertook extensive, persistent, and reasonable efforts to secure the Clinic's compliance with its Policy obligations," which "spanned multiple forums and continued even as the Clinic repeatedly rebuffed them." Doc. # 89, at 29.

Indeed, even more broadly, the public policy of the State of Iowa and the United States protects all contractual obligations. *See* U.S. CONST. art I § 10 cl. 1 (respecting contractual relationships); IOWA CONST. art. I § 21 (same). Accordingly, when one party (the Clinic) wishes to take advantage of provisions beneficial to it, but intentionally disobeys any corresponding provisions benefiting the other party (MMIC), public policy can never weigh in favor of the former. *Accord Grinnell Mut. Reins. Co. v. Jungling*, 654 N.W.2d 530, 541 (Iowa 2002) ("We think that the public policy of freedom of contract for insurance coverage should again prevail.").

## VI. "Because there is no coverage, [MMIC] has no duty to defend...." *Pursell Constr., Inc. v. Hawkeye-Sec. Ins. Co.*, 596 N.W.2d 67, 72 (Iowa 1999).

Next, and outside of the *Hilton* framework for the relief the Clinic seeks, the Clinic argues that the duty to defend ought to continue despite the voiding of the Policy. The argument has no

support in the facts or the law. Indeed, Iowa law is clear, when "there is no coverage, [the insurer] has no duty to defend." *Pursell Constr. Inc. v. Hawkeye-Sec. Ins. Co.*, 596 N.W.2d 67, 72 (Iowa 1999).

The Clinic's (1) efforts to decry longstanding Iowa precedent; and (2) request for the extraordinary remedy of defense where indemnity is foreclosed, are unavailing. In this last-ditch effort, the Clinic "supplements" its Motion to strip individual lines from the hearing transcript of all context. The transcript cannot be read in a vacuum.[7]

The Clinic attempts to misconstrue "that appeal" to mean something it never conveyed. The pages leading up to the singular word the Clinic takes issue with ("that") were discussing the "[p]rospective" relief MMIC sought: "we want this honorable court to not let them do what they have said out loud that they will do and dismiss the appeal." MSJ Tr., at 16:4–7. The conversation related solely to the underlying merits appeal then pending before the Iowa Supreme Court and the availability of both backwards-looking *and prospective* relief. That conversation continued through the carefully excerpted language the Clinic cites to this Court.

In fact, the actual question asked and the answer provided (not all of which the Clinic highlights) demonstrates that while any appeal would be taken from this Court's summary judgment order, *a duty to defend might continue with respect to "that" underlying merits appeal.* That is, it again discussed the same *underlying merits appeal* which had been continuing for several transcript pages by that point:

> The Court: Are you now asking for not only voiding the policy and the 12 million returned, but also, *as a backstop, that the appeal not be dismissed so that in the event…you've also still got the protection of what everybody would appear to agree is a meritorious appeal going forward?*

---

[7] Of course, the out-of-context transcript excerpts were never part of the Court's pre-hearing questions, were never briefed before this Court, and did not appear in the Court's Order. *See generally* Doc. # 89. Nor did it need to, where the Court ordered backwards-looking relief.

> Mr. Zenor: "Well taken, Your Honor. I think that would be appropriate….[F]rankly, I do think that…if the Court were to decide in our favor, if an appeal were taken from your order, I believe that our duty to defend would still exist relative to that appeal."

MSJ Tr., at 17:3-14 (emphasis supplied).[8] This plain reading is made even clearer by the very next paragraph:

> And so maybe we're both—or maybe I'm trying to say what the Court is saying. But, yes, *we do believe that that should persist*, and we think the Court, in fashioning its remedy, has that broad authority.

*Id.* at 17:15-18 (emphasis supplied). Even the Court in the paragraph immediately following the above, acknowledged that "if [the Court] said policy's void…[MMIC is] now out of that litigation." *Id.* at 17:19-25. Again, the colloquy related to the underlying merits appeal. *See* Exhibit 3 (Affidavit). In all contexts, "that appeal" and "that" litigation clearly reflected the underlying merits appeal to the Supreme Court of Iowa, not an appeal of this Court's ruling.[9] The thoughtful inquiry from the Court was one the Order never needed to reach. Simply, in light of the chronology of both the decision of the merits appeal and the summary disposition here, that question has become—if anything—academic.

Of course, this is another example where reading a cold transcript after the fact deprives the reader (here, the Clinic) of further context, whether intentional misstatement or genuine confusion on the part of the Clinic. The transcript does not show the fact that the undersigned

---

[8] Of course, "that appeal" the Court just asked about was the underlying merits appeal.

[9] It is clear MMIC noted that "that" underlying merits appeal should "persist," or be allowed to go forward, notwithstanding this Court finding backwards-looking breaches in this case. *Id.* The Clinic's proposed misinterpretation would make no sense. "[T]hat appeal" never meant a potential appeal from this Court's Order (which would not come for another year). If the Clinic's proposed interpretation were correct, why should "that" be allowed to "persist"? The dialogue amongst the Court and counsel related solely to the merits appeal.

15

counsel gestured towards the Iowa Supreme Court building up the hill to the east while referring to "*that* appeal." *Id.* at 17:14 (emphasis supplied). The relief the colloquy was considering was for the benefit of MMIC—not the Clinic.

Not only is this interpretation the correct one (it is), not only was this the intent of MMIC's arguments (it is), not only is this interpretation the only one that makes sense in the context of the oral argument discussion with the Court (it is), it is also consistent with the gravamen of Iowa law. Indeed, an insurer cannot abandon an insured with an adverse judgment entered against it on appeal. That duty to defend (and prosecute the appeal)—to be clearer yet, *the underlying merits appeal*—would still exist. With the Iowa Supreme Court's reversal, that is no longer this case. We are, instead, back at proverbial Square One, where the insured who willfully jeopardized their own defense in an effort to shackle MMIC with "hundreds of millions and potentially a billion dollars," *see* Doc. # 1-1, at 2, must now face the consequences of its choices and conduct. There is no duty to defend *that* circumstance in a new trial. *Pursell Constr.*, 596 N.W.2d at 72.

Finally, of course, no adverse party has cited *any* Iowa law for the proposition that there is a duty to defend this retrial. There is not.

Accordingly, the withdrawal of any defense is a necessary consequence of Iowa law depriving MMIC the *right* to participate in the new trial in light of the Clinic's material breaches. To the extent the Clinic takes issue with the way it was communicated, it was done in response to Attorney Rowley's email asking "what is MMIC going to do?", after his firm advised the Lane & Waterman firm to not contact Dr. Goodman. *See* Exhibit 1.

## Conclusion

MMIC respectfully requests the Court deny Defendant's Motion to Stay Declaratory

Judgment (Doc. # 92). If it is inclined to grant the Motion, however, it should order a supersedeas bond be satisfied as collateral.

**Certificate of Service**

The undersigned certifies that the foregoing instrument was served upon counsel of the parties to this action on April 24, 2025, by CM/ECF.

*/s/ Adam D. Zenor*

Copies to:

Nicholas C. Rowley
Dominic F. Pechota
Chayce Glienke
TRIAL LAWYERS FOR JUSTICE, PC
421 West Water St., Third Floor
PO Box 228
Decorah, IA 52101
Phone: 563.382.5061
nr@tl4j.com
dominic@tl4j.com
chayce@tl4j.com

Clinton Ehrlich (*Admitted Pro Hac Vice*)
LAW OFFICES OF CLINTON EHRLICH
120 Vantis Dr., Suite 300
Aliso Viejo, CA 92656
Phone: 818.473.5404
clint@ehrlichlaw.org

ATTORNEYS FOR OBSTETRIC AND GYNECOLOGIC ASSOCIATES OF IOWA CITY AND CORALVILLE, PC

Ryan G. Koopmans
KOOPMANS LAW GROUP, LLC
500 E. Court Ave., Suite 420
Des Moines, IA 50309
Phone: 515.978.1140
ryan@koopmansgroup.com

Robert G. Kamenec
FIEGER FIEGER KENNEY & HARRINGTON, PC
19390 W. 10 Miles Rd.
Southfield, MI 48075
Phone: 248.355.5555
r.kamenec@fiegerlaw.com

Matthew M. Patterson
BEAM LEGAL TEAM, LLC
954 W. Washington Blvd., Ste. 215
Chicago, IL 60607
Phone: 312.733.0930
mpatterson@beamlegalteam.com

ATTORNEYS FOR INTERVENOR S.K.

ZENOR LAW FIRM, PLC

By: */s/ Adam D. Zenor*
    Adam D. Zenor, AT0009698

By: */s/ Derek R. LaBrie*
    Derek R. LaBrie, AT0014157

111 E. Grand Ave., Suite 400
Des Moines, IA 50309
Phone: 515.650.9005
Fax: 515.206.2654
adam@zenorlaw.com
derek@zenorlaw.com

MEISSNER TIERNEY FISHER & NICHOLS, SC

By: */s/ Mark D. Malloy*
    Mark D. Malloy, *Pro Hac Vice*

111 E. Kilbourn Ave., 19th Floor
Milwaukee, Wisconsin 53202
Phone: 414.273.1300
Fax: 414.273.5840
mdm@mtfn.com

ATTORNEYS FOR MMIC INSURANCE, INC.