IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DISTRICT

| | |
|---|---|
| MMIC INSURANCE, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>OBSTETRICAL & GYNECOLOGICAL ASSOCIATES OF IOWA CITY AND CORALVILLE, P.C.,<br><br>Defendant,<br><br>THOMAS T. TARBOX, on behalf of S.K.,<br><br>Intervenor. | CASE NO. 3:23-CV-00039-SMR-SBJ<br><br><br>**DEFENDANT'S BRIEF<br>IN SUPPORT OF MOTION<br>TO ALTER OR AMEND<br>THE JUDGMENT** |

## INTRODUCTION

The Clinic respectfully move this Court pursuant to Federal Rule of Civil Procedure 59(e) to reconsider its order granting summary judgment in favor of MMIC. This motion is necessary to correct manifest errors of law and fact in the Court's analysis. The Court's order fundamentally misapplies the summary judgment standard by drawing inferences against the non-moving party and finding prejudice as a matter of law where none exists. The undisputed facts show that any alleged breach of the cooperation clause caused no actual prejudice to MMIC, as the proposed settlement was never consummated and MMIC ultimately prevailed on appeal. At minimum, the Court should clarify that its order applies only to the Clinic and not to Dr. Goodman, who was not a party to this declaratory action and whose coverage rights remain intact under the policy's express terms.

**LEGAL STANDARD**

"[A]ny motion questioning the correctness of a judgment is functionally a Fed.R.Civ.P. 59(e) motion, regardless of how the motion is styled." *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills,* 141 F.3d 1284, 1286 (8th Cir. 1998). "Federal Rule of Civil Procedure 59(e) was adopted to clarify a district court's power to correct its own mistakes in the time period immediately following entry of judgment." *Id*. "Rule 59(e) motions serve a limited function of correcting manifest errors of law or fact or to present newly discovered evidence." *Id*., internal quotation marks omitted.

Here, even though a notice of appeal from the judgment has been filed, this Court "has jurisdiction to entertain the motion, and should do so promptly." *Fobian v. Storage Tech. Corp.,* 164 F.3d 887, 891 (4th Cir. 1999) (applying this rule to a motion for reconsideration under Rule 60, while relying in part on cases involving Rule 59). Under Rule 62.1, "the court may . . . state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." *See* Fed. R. Civ. P. 62.1. "The movant can then request a limited remand from [the reviewing] court for that purpose." *Fobian*, 164 F.3d at 891; see e.g. *Willis v. Thomas*, No. 4:21-CV-926-DPM, 2023 WL 7382538, at *1 (E.D. Ark. Oct. 25, 2023) (requesting limited remand to decide Rule 59 motion).

**ARGUMENT**

**A.    The Court's order fundamentally misapplies the standard for summary judgment**

The Court's initial recitation of the standard for summary judgment in its order is accurate. Dkt. #89 at 11-12, *citing, inter alia*, Fed. R. Civ. P. 56(a). However, the Court subsequently makes two critical errors in applying that standard.

First, the Court appears to assume that summary judgment is appropriate because the moving party's facts were "largely undisputed." Dkt. #89 at 1; *Id*. at 12 ("the nonmovant has admitted virtually all of the movant's statement of undisputed material facts"). That is not the correct standard.

It is the initial burden of the moving party to establish that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2552–53, 91 L. Ed. 2d 265 (1986). When a party "has failed to introduce sufficient facts to demonstrate it is entitled to judgment as a matter of law, its motion for summary judgment must be denied." *Abrams v. City of Chicago*, 635 F. Supp. 169, 173 (N.D. Ill. 1986). That rule applies even when there are "uncontested statements of fact" — i.e., those facts are deemed true for purposes of the motion, but if they are not sufficient to prove entitlement to judgment as a matter of law, then the motion is defective and must be denied. *Id*.

Here, MMIC's separate statement recites anodyne facts that do not entitle it to judgment as a matter of law. Dkt. #22-2 at 1-12. For example, UMF 34 accurately states that the Clinic sued Shuttleworth & Ingersoll for malpractice, but it does not deny that the firm committed malpractice or assert that the suit was filed in bad faith. *Id*. at 6. Similarly, UMFs 59-60 accurately quote Mr. Rowley's statements to Sheriff's Deputies, but they do not claim those statements were false. *Id*. at 11-12. Likewise, UMF 62 states that Mr. Rowley accused MMIC of engaging in a scheme "to get tort reform passed in Iowa," but it does not deny the existence of the scheme or the truth of Mr. Rowley's accusation. *Id*. at 12. The central contention that underpins this Court's order — i.e., that the Clinic engaged in "a pattern of tactical maneuvering rather than good-faith cooperation" — is entirely absent from the separate statement. *Compare* Dkt. #89 at 25 with Dkt. #22-2 at 1-12.

The Court's decision to *sua sponte* infer the existence of that pattern is its second serious error. In effect, the Court inverted the standard for summary judgment, drawing all inferences *against* the Clinic to "holistically" diagnose the existence of "a deliberate strategy." Dkt. #89 at 27. In the Court's words, "[t]he timing of the lawsuit, along with the totality of the Clinic's conduct in the Appeal process, is suspicious." *Id*. at 20, fn. 2. Granting summary judgment based on suspicions is clear error. The Clinic's motivations and the inferences to draw from ambiguous statements and conduct are factual questions for a jury, not legal questions for this Court.

    **B.**    **The Court's rationale for voiding the policy is erroneous, because its order analyzes the issue of prejudice incorrectly**

The Court's analysis of the question of prejudice is also flawed. As the Court acknowledges, even when a material breach of the cooperation clause creates a presumption of prejudice, the insured can "rebut this presumption through satisfactory evidence." Dkt. #89 at 17. Here, the Clinic carried that burden by establishing: (1) that the proposed settlement agreement was never consummated; and (2) that, once Mr. Booher was reinstated as the Clinic's appellate counsel, the Iowa Supreme Court reversed the judgment in the underlying malpractice action.[1] When the Court's order attempts to establish prejudice *despite* those two facts, it makes arguments that are legally defective.

First, the Iowa Supreme Court case was stayed for just over two months due to the Clinic's temporary withdrawal of its consent to be represented by Mr. Booher. Dkt. #27-3 at 12. The Court claims this was prejudicial because "witness recollections inevitably fade with the passage of time." Dkt. #89 at 28. This ignores that the relevant witnesses already testified at the first trial and

---

[1] The Clinic specifically requested an opportunity to brief how the Iowa Supreme Court's decision entitled it to judgment as a matter of law, since it mooted all of the prejudice claimed by MMIC. Dkt #86 at 1-2. This Court failed to receive any briefing on that question before granting summary judgment.

are thus already on the record about what occurred. More importantly, Iowa courts have treated longer delays as being insufficient to prove prejudice as a matter of law. *B & F Jacobson Lumber & Hardware, L.L.P. v. Acuity*, 852 N.W.2d 20, *6 (Iowa Ct. App. 2014) (triable issue of fact whether or not insurer "was prejudiced by the ten-month delay").

Second, the Court observes that MMIC was "temporarily without counsel despite its contractual right to direct the defense." Dkt. #89 at 28-29. It fails to explain how this temporary situation was prejudicial, since MMIC prevailed in the appeal.

Third, the Court states that there was "duplicative preparation and additional expenditures when new counsel later needed to master the complex record." Dkt. #89 at 28-29. That is false: the Clinic restored Mr. Booher as its counsel, avoiding the need to hire a new appellate lawyer. Dkt. #27-3 at 12.

Fourth, the Court claims that disclosure of Mr. Booher's "confidential appellate strategy" may "prejudice the defense in the now-ordered retrial, as opposing counsel has gained unwarranted insight into which issues MMIC's selected counsel viewed as vulnerable." Dkt. #89 at 25. That is also false. The email addresses almost exclusively *appellate issues* — such as attorney misconduct and the improper reference to the FDA — which have no relevance to the second trial. Dkt. #19-2 at 3. The only statement it makes about the substance of the trial-level case is exculpatory, so it is unclear how the disclosure of the email could even possibly be prejudicial on retrial. *Id*.

The case that the Court relies on — *Sargent v. Johnson*, 551 F.2d 221, 224 (8th Cir. 1977) — is not relevant, because it involves a situation where a settlement was consummated, not one where it was abandoned and the underlying judgment reversed on appeal. It is similarly unclear what possible prejudice the Court believes MMIC could have even theoretically suffered from the other conduct listed in its order, such as Mr. Rowley's public accusation that MMIC had engaged

in bad faith or his statements to Sheriff's Deputies that a bad-faith claim is not something that can be collected. *See* Dkt. #89 at 25-26.

"The question of prejudice is usually for the jury, but . . . it may become a question of law for the court." *B &F Jacobson*, 852 N.W.2d at *5, quoting, *Fireman's Fund Ins. Co. v. ACC Chem. Co.,* 538 N.W.2d 259, 265 (Iowa 1995). The "mere speculation that prejudice to an insurer may exist . . . will not suffice to relieve the insurer of its liability wherein the lack of prejudice is clearly demonstrated." *Fireman's Fund*, 538 N.W.2d at p. 265-266, quoting 8 John A. Appleman & Jean Appleman, *Insurance Law & Practice* § 4732, at 26-30 (1981). Here, the facts establish a complete absence of prejudice, so the Clinic is entitled to judgment as a matter of law. At absolute worst, it is entitled to a jury trial about how its conduct supposedly harmed MMIC, rather than having its coverage declared void as a matter of law.

    **C.**    **At minimum, the Court should clarify that its order applies only to the Clinic — not to Dr. Goodman**

Even if the Court is unwilling to modify its order as to the Clinic, it should clarify that the order does not — and logically cannot — deprive Dr. Goodman of coverage. That is a consequence, not only of the fact that Dr. Goodman was not a party to this declaratory action, but also of the very contractual provisions upon which the Court's decision rests.

Like jurisdictions around the country, Iowa distinguishes between provisions that refer to "*the* insured" — i.e., the specific insured seeking coverage for a given claim — and those which apply more broadly to "*an* insured" or "*any* insured." *Postell v. Am. Fam. Mut. Ins. Co.,* 823 N.W.2d 35, 45–46 (Iowa 2012) ("the term insured does not always mean 'any' insured person, but sometimes, only 'the' insured claiming coverage").

That distinction is present in MMIC's policy. Dr. Goodman and the Clinic were separate insureds: the Clinic was the policyholder, and Dr. Goodman was an individual insured. Dkt. #22-

3 at 7. Certain provisions applied to the insureds collectively. For example, if the Clinic made misrepresentations on the application, then the policy would be rescinded as to *all* insureds. *Id*. at 8, emphasis altered ("By accepting this policy the policyholder, on behalf of *all insureds*, agrees that . . . A misrepresentation or omission of material information will render this policy void.")

Yet the clauses at issue in this case are *not* collective clauses. They refer to the specific insured seeking coverage — i.e., they state that *"[t]he* insured must fully cooperate" and that "[n]o legal action may be brought . . . unless there has been full compliance by *the* insured with all of the terms and conditions of the policy." *Id*. at 9, emphasis added. By their plain text, they focus on the particular insured seeking coverage, not all insureds under the policy. This is eminently logical: if one insured fails to cooperate by e.g. failing to testify at a hearing, that insured's coverage is voided for that claim, but it would be arbitrary and unfair towards the other insureds if their coverage simultaneously vanished.

To the extent that the Court's order implies otherwise, it should be corrected. The question has become more than academic, because MMIC is now refusing to defend Dr. Goodman, based on the ambiguous language in this Court's order. *See* Ehrlich-Quinn Decl. at ¶ 2. The Court should clarify that its order applies to the Clinic but does not affect Dr. Goodman's coverage as a separate insured.

Dated: April 28, 2025 

Respectfully submitted,

TRIAL LAWYERS FOR JUSTICE, P.C.

By: /s/ Clinton Ehrlich
(Admitted *pro hac vice*)

By: /s/ Dominic Pechota
Nicholas C. Rowley, AT0009515
Dominic F. Pechota, AT0006175

Clinton Ehrlich, CA#324021

421 W. Water Street, Third Floor
Decorah, IA 52101
Phone: (563) 382-5071
Fax: (888) 801-3616
Email: nr@tl4j.com
Email: dominic@tl4j.com
Email: clint@tl4j.com

ATTORNEYS FOR DEFENDANT
OBSTETRIC AND GYNECOLOGICAL
ASSOCIATES OF IOWA CITY AND
CORALVILLE, P.C.

**Certificate of Service**

The undersigned certifies that the foregoing instrument was served upon counsel of the parties to this action on April 28, 2025, by CM/ECF.

*/s/ Dominic F. Pechota*

Copies to:

Adam D. Zenor
Derek R. LaBrie
ZENOR LAW FIRM, PLC
111 E. Grand Ave., Suite 400
Des Moines, IA 50309
Phone: (515) 650-9005
Fax: (515) 206-2654
Email: adam@zenorlaw.com
Email: derek@zenorlaw.com

Mark D. Malloy
MEISSNER TIERNEY FISHER & NICHOLS, SC
111 E. Kilbourn Ave., 19th Floor
Milwaukee, WI 53202
Phone: (414) 273-1300
Fax: (414) 273-5840
Email: mdm@mtfn.com

ATTORNEYS FOR PLAINTIFF

MMIC INSURANCE, INC.

Ryan G. Koopmans
KOOPMANS LAW GROUP, LLC
500 E. Court Ave., Suite 420
Des Moines, IA 50309
Phone: (515) 978-1140
Email: ryan@koopmansgroup.com

Robert G. Kamenec
FIEGER FIEGER KENNEY &
HARRINGTON, PC
19390 W. 10 Miles Rd.
Southfield, MI 48075
Phone: (248) 355-5555
Email: r.kamenec@fiegerlaw.com

Matthew M. Patterson
BEAM LEGAL TEAM, LLC
954 W. Washington Blvd., Suite 215
Chicago, IL 60607
Phone: (312) 733-0930
Email: mpatterson@beamlegalteam.com

ATTORNEYS FOR INTERVENOR S.K.