IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DISTRICT

| | |
|---|---|
| MMIC INSURANCE, INC., <br><br> Plaintiff, <br><br> vs. <br><br> OBSTETRICAL & GYNECOLOGICAL ASSOCIATES OF IOWA CITY AND CORALVILLE, P.C., <br><br> Defendant, <br><br> THOMAS T. TARBOX, on behalf of S.K., <br><br> Intervenor. | CASE NO. 3:23-CV-00039-SMR-SBJ <br><br><br> **DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO STAY DECLARATORY JUDGMENT** |

## INTRODUCTION

MMIC's opposition attempts to "lean in" to the Court's displeasure with one of the Clinic's attorneys, Mr. Rowley, in the hope that raising the emotional temperature will obscure the substantive legal question.

This Court should not take the bait. It should dispassionately apply the four-factor test for determining whether its order should be stayed.

Under that test, there is (1) a serious legal question, (2) obvious irreparable harm, (3) minimal injury from the stay itself, and (4) no public-policy reason to deny relief. A stay is clearly warranted, because it is the only way to ensure that review by the Eighth Circuit will be meaningful rather than symbolic.

# ARGUMENT

**A.     Most of MMIC's resistance comprises non-substantive attacks on Mr. Rowley**

Much of MMIC's opposition consists of colorful and sarcastic quips by counsel that are untethered to the legal questions before the Court. In essence, the opposition simply repeats that the Clinic and Mr. Rowley are "the bad guys" and that the Court therefore did the right thing by ruling against them. *See e.g.* Dkt. #98 at 12 ("[I]s MMIC expected to tolerate unfounded legal malpractice actions against its newly-selected counsel? Will the Clinic be able to cherry-pick which parts of the insurance policy it wants to enforce given the exigency of the day? Up to this point, the Clinic acted as if there was no policy to speak of or be bound by, and now it wants the policy to be reinstated?").[1]

The Clinic will not engage with this vituperative rhetoric, except to note that one of MMIC's claims is objectively false: The Clinic has *not* agreed to let S.K. re-add Dr. Goodman to the case pending in Johnson County. MMIC's statement to that effect is a false representation to this Court. *See* Dkt. #98 at 11 ("Currently before the Johnson County court, both S.K. and the Clinic are attempting to unwind that agreement and allow S.K. to re-assert the same claim against Dr. Goodman. This is simply further evidence of S.K.'s and the Clinic's collusion. . . . Despite this Court's Order, the Clinic and S.K. are, once more, engaged in the same conduct.") It should be withdrawn immediately.

---

[1] The assertion that the malpractice lawsuit against Shuttleworth & Ingersoll is "meritless" is pure theater. MMIC has not challenged the merits of the malpractice lawsuit in this Court. *See* Dkt. #22-2 at 1-12. Nor could it, given that its appointed trial counsel exposed the Clinic to the largest medical-malpractice verdict in the history of the State of Iowa.

### B. MMIC's arguments regarding the four-factor are each legally erroneous

MMIC concedes that whether the Court's ruling should be stayed pending appeal must be decided under the classic four-factor test for injunctive relief. Dkt. #98 at 3. Unfortunately, it attempts to distort each of the four factors.

#### 1. The Clinic is not required to persuade this Court that its order was incorrect

MMIC treats the first factor as if the Clinic is required to persuade this Court that its own ruling is erroneous. Dkt. #98 at 3-6. That is, of course, false: If the Court believed that its ruling was incorrect, then it would be obligated to reverse it, not stay it. The test for a stay cannot require a showing adequate for granting a Rule 59(e) motion.[2]

Instead, the Clinic is required to establish only that there is a "serious question" on the merits. Dkt. #92-1 at 5, *citing*, *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). That test can be satisfied even if this Court believes that it is more likely than not that the Clinic will lose on appeal. Dkt. #92-1 at 5, *citing*, *Dataphase Sys., Inc. v. CL Sys., Inc.,* 640 F.2d 109, 113 (8th Cir. 1981). Because MMIC begins with the incorrect legal standard, its ensuing analysis does not address the actual question before the Court.

Here, there is a serious question, because (1) the appeal involves a legal question that the Iowa Supreme Court and Eighth Circuit have never before answered and (2) the forms of prejudice that the Court relies on have also never previously been recognized. Dkt. #92-1 at 5-6. Plainly, there is a higher probability than normal that the appellate court will not accept this Court's approach to these issues. See Dkt. #92-1 at 4, citing *Ohio Valley Env't Coal., Inc. v. Pruitt*, No. CV 3:15-0271, 2017 WL 1712527, at *2 (S.D.W. Va. May 2, 2017). And because there will clearly

---

[2] The Clinic has, in fact, filed such a motion. Dkt. #99 at 1-2. The arguments advanced there are further proof that a serious question is presented, which merits a stay. Dkt. #99-1 at 2-7.

be irreparable harm to the Clinic in the absence of a stay, "the showing of success on the merits can be less." *Dataphase,* 640 F.2d at p. 113.

### 2. The Clinic being financially annihilated in the absence of defense counsel is "irreparable harm"

MMIC argues that economic loss cannot constitute irreparable harm. Dkt. #98 at 7. Not so. Not only does non-recoverable economic loss constitute irreparable harm, but even *recoverable* loss will suffice if it "threatens the very existence of the [party's] business." *Carlson v. City of Duluth*, 958 F. Supp. 2d 1040, 1050 (D. Minn. 2013), *quoting*, *Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir.1986).

Here, the malpractice action against the Clinic threatens tens of millions of dollars in liability. If the Clinic is deprived of a defense, it will be forced to settle on terms that are equivalent to financial annihilation. Dkt. #92-2 at 1-2, ¶ 3. Under any reasonable definition, this is irreparable harm.[3]

MMIC argues that the Clinic can simply draft the counsel retained to prosecute its bad-faith claim against MMIC to serve as replacement defense counsel in the malpractice litigation filed by S.K. Dkt. #98 at 8. That is false. It ignores the nature of contingent fees. See *City of Burlington v. Dague*, 505 U.S. 557, 564–65, 112 S. Ct. 2638, 2642, 120 L. Ed. 2d 449 (1992) (explaining that contingency lawyers loan their time for a percentage of potential future recovery). There is no recovery available to the Clinic against S.K., so the Clinic does not have the same options for obtaining representation that it does in litigation against MMIC.

---

[3] Parties seeking a stay are not required to show that their *constitutional rights* are violated, so MMIC's argument regarding the scope of the Sixth Amendment is a non sequitur. *See* Dkt. #8-9 (arguing "there is no right to counsel in civil cases") Indeed, the fact that courts do not appoint defense counsel in civil cases is one of the central reasons that the Clinic and other insureds *pay* for liability policies that will cover the expense of such counsel.

      **3.**      **The "substantial injury" prong strongly favors a stay due to the economic inequality of the parties**

In its brief, the Clinic argued that the economic disparity between MMIC and the Clinic demonstrates that MMIC will not suffer "substantial injury" if it is forced to continue paying for the Clinic's defense during the pendency of the appeal to the Eighth Circuit. Dkt. #92-1, citing *Knutson v. AG Processing, Inc.*, 302 F. Supp. 2d 1023, 1038 (N.D. Iowa 2004) (comparing relative financial means of parties for "substantial injury" analysis).

MMIC has no substantive answer to this point in its opposition. *See* Dkt. #98 at 10-12. Plainly, a multi-billion-dollar insurance company having to spend thousands of dollars on lawyers for one insured is not a *substantial* injury that precludes granting a stay.

      **4.**      **MMIC's "public interest" argument is circular**

MMIC's analysis of the final "public interest" factor is circular: it presupposes that the Clinic will lose on the merits — i.e., that it has collusively and prejudicially breached the cooperation clause — and then concludes that the public interest favors punishing that misconduct. Dkt. #98 at 12-13 (calling the Clinic and Mr. Rowley "bad actors").

Federal courts have rejected similar attempts to rig the public-interest factor by turning it into a verdict on which party deserves to *ultimately* prevail on the merits. *Blount Pride, Inc. v. Desmond*, 690 F. Supp. 3d 796, 807–08 (E.D. Tenn. 2023) (granting TRO to avoid premature determination of whether drag performance was unlawful).

What the public interest actually favors is the procedure that will allow an important question to be fully and accurately resolved. *Id.* (distinguishing "victory on the merits" from "procedural success" for public-interest analysis). Here, that means that the public interest favors allowing the Clinic to obtain meaningful appellate review in the Eighth Circuit, rather than having its rights as an insured extinguished prematurely. Dkt. #92-1 at 7.

### C. Mr. Zenor cannot retcon his promise of a defense during the pendency of the appeal from this Court's order

In a supplemental filing in support of its motion, the Clinic pointed out that MMIC's counsel previously stated on the record that, if this Court ruled in MMIC's favor, MMIC would continue to fund the Clinic's defense during the pendency of an appeal from that order. Dkt #95 at 1-2. Obviously, this express promise strengthens the case for a stay.

MMIC's counsel, Mr. Zenor, admits that he said the following: "[I]f the Court were to decide in our favor, if an appeal were taken from your order, I believe that our duty to defend would still exist relative to that appeal." *Id*. at 2, ¶ 6. However, he accuses the Clinic of "attempt[ing] to mischaracterize" the meaning of those words. *Id*. at 3, ¶ 11. This is ironic, because Mr. Zenor's interpretation of his words is identical to the Clinic's.

Specifically, Mr. Zenor emphasizes that when he said "that appeal" he meant the merits appeal before the Iowa Supreme Court — not the appeal of this Court's order to the Eighth Circuit. *Id*. at 2, ¶ 6. He emphasizes that he was literally gesturing towards the Iowa Judicial Building, where the Iowa Supreme Court sits. *Id*. at 2, ¶ 7. That is all true.

What remains a mystery is why Mr. Zenor believes this absolves him from having promised a defense to the Clinic. By his own admission, what Mr. Zenor stated was that (1) if this Court ruled in favor of MMIC and (2) an appeal were taken from this Court's order then (3) MMIC's duty to defend the Clinic in the malpractice litigation would still exist. *Id*. at ¶ 6.

Yes, the *procedural stage* of the malpractice litigation that Mr. Zenor referenced was the then-pending appeal before the Iowa Supreme Court. But if MMIC had a duty to defend the Clinic when the case was before the Iowa Supreme Court, it obviously would also have a duty to defend the Clinic *in the same case* when the matter was remanded for a second trial. The distinction that Mr. Zenor now attempts to draw — i.e., that he was conceding MMIC would have an ongoing

duty to defend the Clinic before the State Supreme Court but not in the trial court — does not correspond to any known principle of insurance law. *Id*. at 3, ¶ 9.

Nor does it make sense when Mr. Zenor claims his words were not intended to apply "*after* this Court voided coverage." *Id*., original emphasis. At the time Mr. Zenor made his representation to the Court, MMIC was requesting that this Court void the Clinic's coverage. Thus, when Mr. Zenor referenced a scenario in which the Court "decide[d] in [MMIC's] favor" and an appeal was "taken from [that] order" he was clearly referencing an order voiding the policy. There was no other order at issue.

## CONCLUSION

Even if MMIC had not promised to defend the Clinic during the pendency of an appeal of this Court's order, the four-factor test would still clearly favor a stay. The fact that Mr. Zenor *did* make that representation further tilts the balance of equities in favor of a stay.

Dated: May 1, 2025

Respectfully submitted,

TRIAL LAWYERS FOR JUSTICE, P.C.

By: /s/ Clinton Ehrlich
(Admitted *pro hac vice*)

By: /s/ Dominic Pechota
Nicholas C. Rowley, AT0009515
Dominic F. Pechota, AT0006175
Clinton Ehrlich, CA#324021

421 W. Water Street, Third Floor
Decorah, IA 52101
Phone: (563) 382-5071
Fax: (888) 801-3616
Email: nr@tl4j.com
Email: dominic@tl4j.com
Email: clint@tl4j.com

ATTORNEYS FOR DEFENDANT
OBSTETRIC AND GYNECOLOGICAL
ASSOCIATES OF IOWA CITY AND
CORALVILLE, P.C.

**Certificate of Service**

The undersigned certifies that the foregoing instrument was served upon counsel of the parties to this action on May 1, 2025, by CM/ECF.

*/s/ Dominic F. Pechota*

Copies to:

Adam D. Zenor
Derek R. LaBrie
ZENOR LAW FIRM, PLC
111 E. Grand Ave., Suite 400
Des Moines, IA 50309
Phone: (515) 650-9005
Fax: (515) 206-2654
Email: adam@zenorlaw.com
Email: derek@zenorlaw.com

Mark D. Malloy
MEISSNER TIERNEY FISHER & NICHOLS, SC
111 E. Kilbourn Ave., 19th Floor
Milwaukee, WI 53202
Phone: (414) 273-1300
Fax: (414) 273-5840
Email: mdm@mtfn.com

ATTORNEYS FOR PLAINTIFF
MMIC INSURANCE, INC.

Ryan G. Koopmans
KOOPMANS LAW GROUP, LLC
500 E. Court Ave., Suite 420
Des Moines, IA 50309
Phone: (515) 978-1140
Email: ryan@koopmansgroup.com

Robert G. Kamenec
FIEGER FIEGER KENNEY &
HARRINGTON, PC
19390 W. 10 Miles Rd.
Southfield, MI 48075
Phone: (248) 355-5555
Email: r.kamenec@fiegerlaw.com

Matthew M. Patterson
BEAM LEGAL TEAM, LLC
954 W. Washington Blvd., Suite 215
Chicago, IL 60607
Phone: (312) 733-0930
Email: mpatterson@beamlegalteam.com

ATTORNEYS FOR INTERVENOR S.K.