IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DISTRICT

| | |
|---|---|
| MMIC INSURANCE, INC.,<br><br>  Plaintiff,<br><br>v.<br><br>OBSTETRIC AND GYNECOLOGIC ASSOCIATES OF IOWA CITY AND CORALVILLE, P.C.,<br><br>  Defendant,<br><br>THOMAS T. TARBOX, on behalf of S.K.,<br><br>  Intervenor. | CASE NO. 3:23-cv-00039-SMR-SBJ<br><br><br><br>**PLAINTIFF'S RESISTANCE TO DEFENDANT'S MOTION TO ALTER OR AMEND THE JUDGMENT (DOC. # 99)** |

MMIC Insurance, Inc. ("MMIC"), by and through the undersigned counsel, per L.R. 7(e), hereby submits its Resistance to Defendant's Motion to Alter or Amend the Judgment (Doc. # 99).

**Introduction**

Rule 59(e) "cannot be used as a vehicle to…re-argue the merits of claims." *Nordgren v. Hennepin Cnty.*, 96 F.4th 1072, 1077 (8th Cir. 2024) (affirming denial of Rule 59(e) motion when it was merely a disguised motion to reconsider). The Clinic's second post-judgment motion attempts to do just that. The Clinic identifies no manifest error of law or fact—it simply takes issue with the outcome. Plainly, that is no basis for altering or amending the judgment.

**Legal Standards**

"Rule 59(e) motions serve a limited function of correcting 'manifest errors of law or fact or to present newly discovered evidence.'" *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998) (quoting *Hagerman v. Yukon Energy Corp.*,

1

839 F.2d 407, 414 (8th Cir. 1988)). Repeating the same prior merits arguments—or raising new ones the movant could have raised earlier—are no bases on which to grant the relief sought. *Nordgren*, 96 F.4th at 1077; *see also Voss v. Housing Auth. of the City of Magnolia*, 917 F.3d 618, 626 n.6 (8th Cir. 2019) ("We also conclude the district court did not abuse its discretion in denying Voss's Rule 59(e) motion, which largely repeated the same arguments advanced at the summary judgment stage."). These considerations are even weightier when the arguments lack merit.

## Argument

The Court's summary judgment holding is not only correct, but is the only result required by Iowa law on this undisputed record. On the Clinic's second ask, Policy number 600194—the Policy which used to cover Dr. Goodman—is void. The Clinic provides no apposite authority for narrowing this Court's thoughtful order to revive parts of the insuring agreement. Accordingly, the Motion should be denied.

**I.    The Court should not countenance relitigating its summary judgment order.**

As an initial matter, there is no authority supporting the use of Rule 59(e) as a motion to reconsider. That is what the Clinic attempts here, taking issue with (A) the standards governing summary judgment; and (B) the presumed and actual prejudice in the summary judgment record. Rule 59(e) is not intended to be invoked every time an unsuccessful litigant is unhappy with the outcome. Instead, relief is rarely appropriate. It is certainly not appropriate here.

**A.    The Court abided by summary judgment standards on this undisputed record.**

The Clinic first takes issue with whether the uniquely undisputed factual record before this Court actually warrants summary judgment. Of course, the absence of a material fact dispute is

certainly relevant to whether summary judgment is appropriate. FED. R. CIV. P. 56(a). The Clinic's suggestion to the contrary is simply wrong.

Next, the irony is not lost in the Clinic's reliance on *Celotex*, which effected a marked shift in clarifying a *lesser* burden on moving parties in cases "where the nonmoving party will bear the burden of proof at trial on a dispositive issue." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The Court held that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. In this case, prejudice is presumed, and "unless it is overcome by a satisfactory showing of lack of prejudice, [the presumption] will defeat the insured's recovery." *Met-Coil Sys. Corp. v. Columbia Cas. Co.*, 524 N.W.2d 650, 654 (Iowa 1994); *see also Simpson v. U.S. Fidelity & Guar. Co.*, 562 N.W.2d 627, 632 (Iowa 1997) ("[I]n order to rebut the presumption of prejudice to the insurer, *the insured* must show lack of prejudice by satisfactory evidence." (emphasis supplied)). Here, the burden of demonstrating MMIC was not prejudiced (it was) at any trial would rest with the insured. On summary judgment, that means the insured bears the *Celotex* burden.[1]

Even on this Motion, the Clinic continues to admit to all of the material facts. That they are indisputable does not entitle the Clinic to absolution—it counsels for the opposite. *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

---

[1] It is unclear how a forty-year-old out-of-jurisdiction district court decision *pre-dating* even *Celotex* and not cited *at all* since 1991 could move the needle on this Court's summary judgment standards, let alone satisfy the strict purposes of Rule 59(e) against arguments which could have been raised earlier. *See* Doc. # 99-1, at 3 (citing to *Abrams v. City of Chi.*, 635 F. Supp. 169, 173 (N.D. Ill. 1986)).

The pattern and practice the Court found is a necessary consequence of the repeated and admitted breaches perpetrated by Attorney Rowley on behalf of the Clinic and the doctors.² Moreover, whether the Court found a "pattern" of improper conduct or countless independent breaches of the Policy's various conditions precedent surely makes no difference on this undisputed record.

Lastly, the Clinic contends that the Court's reference to "suspicious" behavior is an inappropriate basis on which to grant summary judgment. Regardless of the strength of that position, the Court *explicitly* said it was *not* granting summary judgment on that basis in the sentence immediately prior: "The Court does *not* reach the issue of whether the alleged 'manufactured' conflict of interest for the defense attorneys violated the Policy." Doc. # 89, at 20 n.2 (emphasis supplied). The Motion's argument to the contrary is further example of unnecessary litigation in this case.³ It should not be indulged.

### B. Prejudice is presumed and this record reflects actual prejudice.

After consistently endeavoring to undermine the underlying merits appeal to the Iowa Supreme Court, including trying to distract with unsupportable notions of "bad faith" and misreadings of *Kelly*, the Clinic's recent Motion asks this Court now to ignore everything *but* the merits of that appeal. This case is about more than just *the result* achieved at the Iowa Supreme Court. Despite Attorney Rowley's best efforts, it is quite plainly about the "interference" with the merits litigation. *See* Doc. # 1; *see also* Doc. # 89, at 33 ("The Clinic's conduct—withdrawing

---

² The record is replete with Attorney Rowley's anti-MMIC rhetoric, which began on day one in this case and continued throughout.

³ The Clinic appears to appreciate its *post hoc* quibble with the Court's ruling does not entitle it to relief. In its first post-judgment motion where it attempted to argue it was likely to succeed on appeal, the Clinic never took issue with the Court's application of longstanding summary judgment standards. *See* Doc. # 92-1, at 4–6. Nor did it do so in its unauthorized overlength reply brief. Doc. # 103; *see also* L.R. 7(g).

consent for selected counsel, engaging in unauthorized settlement negotiations, publicly disclosing litigation strategy, and otherwise undermining the appeal process—clearly constitutes such interference.").

On the prejudice question, the Clinic also misstates the standard by which the Court properly found itself governed. *Met-Coil Sys.*, 524 N.W.2d at 659 ("[W]e do not have to go so far as to hold that defendant insurers were prejudiced as a matter of law. We need only conclude, and do conclude, that insured failed to show lack of prejudice as a matter of law."). Like before, the Clinic advances nothing to support its burden to rebut the presumption of prejudice. *Am Guar. & Liab. Ins. Co. v. Chandler Mfg. Co.*, 467 N.W.2d 226, 228–29 (Iowa 1991) ("[A] substantial breach of a condition precedent which is not excused or waived *must be presumed prejudicial to the insurer*." (emphasis supplied)).

Against this presumption, the Clinic provides nothing but "(1) that the proposed settlement agreement was never consummated; and (2) that, once Mr. Booher was reinstated as the Clinic's appellate counsel, the Iowa Supreme Court reversed the judgment in the underlying medical malpractice action." *See* Doc. # 99-1, at 4. The Court properly found prejudice far beyond the Clinic's two proposed conclusory misunderstandings. *E.g.*, Doc. # 89, at 20 ("The delay in the appellate process, the disclosure of appeal strategy through public filings, and the interference with MMIC's right to direct the litigation constitute material breaches that have caused actual prejudice."); *id.* at 25 ("This disclosure may continue to prejudice the defense in the now-ordered retrial, as opposing counsel has gained unwarranted insight into which issues MMIC's selected counsel viewed as vulnerable."); *id.* at 26 ("Fifth, Attorney Rowley has engaged in prejudicial

5

extra-judicial statements that undermine the defense of the underlying claim."). The Clinic is silent.

*First*, the Clinic argues that, as a matter of law, the delay of the oral argument could not be prejudicial. For that proposition, it cites a decade-old unpublished Iowa Court of Appeals case dealing with a *first-party property* insurance policy and *not* confronting interference with merits litigation in a *third-party liability* policy context and otherwise *not* confronting the policy provisions at issue here. *E.g.*, *B & F Jacobson Lumber & Hardware, LLP v. Acuity*, No. 13-0952, 2014 WL 1714968, at *4 (Iowa Ct. App. Apr. 30, 2014) (holding only it "is unclear from this record…whether the policy notice provisions apply to situations such as this" because "[t]he summary judgment record we have on appeal does not contain the insurance policy at issue").

The Clinic's reliance on this authority is wrong for a number of reasons. *First*, unpublished Iowa authority is not binding. IOWA R. APP. P. 6.904(2)(a)(2). *Second*, a Rule 59(e) motion is the improper vehicle in which to raise new authority (especially decade-old authority). *Nordgren*, 96 F.4th at 1077 ("Rule 59(e) has a corrective purpose and as such cannot be used as a vehicle to tender new legal theories, raise arguments that could have been made prior to the issuance of judgment…."). *Third*, the case is inapplicable on the merits because the protected rights of a first-party insurer (investigation of damage) differ from a third-party insurer's (defense of underlying liability).[4] *Fourth*, the delay was prejudicial in far more ways that the Clinic even tries to contend with: MMIC lost a year's worth of interest on the $12 million policy proceeds due to the delay.

---

[4] In *B & F Jacobson*, the Court found that whether tornado damage was investigated in days or months did not affect that investigation—the damage was still there. The insurer's failure to investigate provoked a dispute as to the terms of the absent Policy. A liability insurer has different interests, and the conditions precedent serve different purposes than a 'notice of claim' first-party condition.

The Clinic has *never*—and *could not*—produced authority that the presumption of prejudice can be rebutted where MMIC suffered *actual monetary loss*. In fact, the Clinic does not even try. If anything, that reinforces the Court's finding of actual prejudice. *Fifth*, as the Court rightly notes, "witness recollections inevitably fade with the passage of time." Doc. # 89, at 28.[5] *Sixth*, MMIC was deprived of representation in the direct appeal for a period of time. *See* Doc. # 89, at 28. *Seventh*, and relatedly, the Clinic's conduct "required duplicative preparation and additional expenditures when new counsel later needed to master the complex record." *Id.* at 28–29. Of course, the Clinic omits that it was its conduct which required hiring the Lane & Waterman firm for the new trial, in addition to oral argument preparation on *two* occasions (December 14, 2023 and September 11, 2024). In the face of this, the Clinic offers exactly *nothing* to meet its burden.

*Second*, the Clinic argues that the attorney work product which was improperly publicly filed is no problem at all because it "addresses almost exclusively appellate issues." Doc. # 99-1, at 5 (emphases omitted).[6] Indeed, even as to those appellate issues, those remain the very issues which S.K. will now need to correct in the new trial (and were imprudently filed publicly). The Clinic's absence of authority or factual support is telling.

*Third*, the Clinic takes issue with *Sargent v. Johnson*, 551 F.2d 221, 224 (8th Cir. 1977) on the grounds that no settlement was "consummated" here. Doc. # 99-1, at 5. In this way, the Clinic suggests that it can take a breach to the precipice and expect to be absolved, and somehow *still rebut*

---

[5] The Clinic takes issue with this sub-finding. This is a long-recognized feature of delay. *E.g.*, *United States v. Mann*, 291 F. Supp. 268, 271 (S.D.N.Y. 1968) ("[E]veryone knows that memories fade, evidence is lost…."); *State Farm Mut. Auto. Ins. Co. v. Healthcare Chiropractic Clinic, Inc.*, No. 15-cv-2527 (SRN/HB), 2016 WL 9307608, at *3 (D. Minn. Apr. 26, 2016) (appreciating "a delay can result in prejudice to plaintiffs when witnesses relocate, memories fade" and others (cleaned up)). It would be the Clinic's burden to rebut this. It counters with *zero* authority.

[6] The word "almost" should not be overlooked as the admission it is.

the presumption of prejudice. That is not the law. Indeed, this insurance policy protects the *negotiation* of settlements—not just the mere execution of a settlement agreement.[7] *See, e.g.*, Doc. # 89, at 20 ("The Policy explicitly limits the Clinic's authority to engage in settlement negotiations independent of MMIC."). Accordingly, *Sargent* is on point—in that both cases confront a material breach of plain policy language for the same collusive purposes.[8]

*Fourth*, the Clinic makes no effort to even address Attorney Rowley's extra-judicial statements, the use and interest on the $12 million MMIC lost, the improper and premature bad faith claims MMIC had to needlessly defend, and others. *See also* Doc. # 87, at 2 (recapitulating prejudices even after the Iowa Supreme Court's remand).

Finally, "[e]ven though the question of prejudice is usually for the jury, if the facts are undisputed and the only question concerns the breach of the policy, it may become a question of law for the court." *Simpson*, 562 N.W.2d at 632. What material fact has the Clinic disputed here?

## II. Policy # 600194 is completely void on S.K.'s claim.

Lastly, the Clinic requests this Court narrow its holding to only part of Policy # 600194. There is no basis in law or fact to do that. A voided policy is just that.

*First*, the Clinic appears to argue that Dr. Goodman is insured under a separate policy and would be unaffected by this Court's Order. That the Clinic has to ask for that relief demonstrates

---

[7] The settlement in *Sargent* even obtained judicial approval. *Sargent*, 551 F.2d at 232 ("[E]ntering into a settlement of the pending litigation without the insurer's consent, *even with court approval*, constituted a violation of terms of the existing policies."). *Sargent* also never confronted the "settlement negotiations" provision applicable here. *Accord id.* at 230 n.12 (surveying the policy provisions at issue in the *Sargent* case). The failure to "consummate" does not change the consequence of the Clinic's repeated breaches.

[8] Let alone the unknown admissions made in those communications. Of course, the Clinic never gave those discussions to this Court (or to MMIC)—and it would be too late to do so now (even if they were helpful to the Clinic). That is no way to carry that burden.

8

its futility. Of course, Dr. Goodman and the Clinic are "insureds" under the very same Policy (number 600194):

| Policy Number: 600194 | | | | Effective Date: 01/01/2019 |
|---|---|---|---|---|
| **Schedule of Insureds** | | | | |
| Insured Entity | Prior Acts Date | Excess Prior Acts Date | | Exceptions |
| Obstetric & Gynecologic Assoc Of Iowa City and Coralville PC | 09/30/1976 | 09/30/1976 | | |
| Individual Insured | Prior Acts Date | Excess Prior Acts Date | Specialty Class Code | Exceptions |
| Jill C. Goodman, MD | 08/01/2010 | 08/01/2010 | 80153 | |

*Doc. # 22-3, at 7 (Schedule of Insureds)*

The Court voided the Policy. *See* Doc. # 89, at 34. That does not entitle anybody to select portions of it to survive. This Court should deny the request.

*Second*, the Clinic cannot ignore the Policy's specifically defined terms. The Clinic argues that because the article "the" precedes the defined term "insured" in some conditions precedent, the Policy should be selectively active as to Dr. Goodman. Not so. The Policy is clear: "***Insured*** means *any* entity or individual qualifying as an ***insured*** under SECTION FIVE—INSUREDS." *See* Policy, Section FOUR (E) (Doc. # 22-3, at 13) (emphasis supplied). Section Five of the Policy, in turn, includes any individual insured listed in the Schedule of Insureds (screenshotted above). *See* Policy, Section FIVE (A) (Doc. # 22-3, at 14). In fact, this definitional language uses the precise delimiter "any" which the Clinic argues would have to be used to apply this Court's Order and judgment to Dr. Goodman. That the Policy contains precisely that word in its definition forecloses the Clinic's interpretation by its own admission. An insured is not entitled to rewrite the Policy; that language is binding, and constitutes an admission that the Policy is void for 'all', 'each', 'any', or 'the' insureds (or whatever other article for which the Clinic now argues). *See Amish Connection*,

*Inc. v. State Farm Fire & Cas. Co.*, 861 N.W.2d 230, 236 (Iowa 2015) (holding unambiguous language in the Policy is to be given effect).

*Third*, there can be no dispute that Attorney Rowley's conduct was taken on behalf of the individual doctors, too. *See, e.g.*, Doc. # 1-1, at 2 ("I believe we have a perfected bad faith, breach of fiduciary duty, fraud, and punitive damages claim that I can pursue on behalf of the individual doctors and we are preparing that lawsuit."); Doc. # 32-1, at 9 (Settlement Agreement signed by "Dr. Jill Goodman, on behalf of The Clinic"); *Obstetrics & Gynecologic Assocs. of Iowa City & Coralville, P.C. v. MMIC Ins. Inc.*, No. LACV084850 (Iowa Dist. Ct. Johnson Cty.) (bad faith claim brought by Attorney Rowley and others on behalf of both the Clinic and Dr. Goodman). There can be no dispute that the same conduct performed by the same actors, represented by the same Attorney Rowley, done in contravention of the very same provisions of the very same Policy, applies to both the named insured entity and the individual insured doctor. Simply, a void policy is void.

*Fourth*, there can also be no dispute that Dr. Goodman was dismissed and all insurance rights "assigned to the Clinic." *See* Doc. # 32-1, at 1 ¶ 6 ("Plaintiff agreed to dismiss Dr. Jill Goodman as an individual defendant, and assign her applicable insurance coverage to The Clinic."). Whatever the Clinic elected to do with that insurance coverage as assignee (violate its plain conditions precedent), does not entitle unwinding that agreement now. The Clinic appears to admit that it does not intend to unwind it. *See* Doc. # 103, at 2 ("The Clinic has *not* agreed to let S.K. re-add Dr. Goodman to the case pending in Johnson County.").[9] Accordingly, this issue is

---

[9] If that pretrial MMIC-negotiated resolution were to be unwound for the sole purpose of reinitiating a claim of coverage (or suit for the same), additional conditions precedent would be invoked (i.e., consent to settle provisions).

either (1) moot; or (2) admitted. Either way—Dr. Goodman's right was transferred to the Clinic or the Clinic is not trying to unwind that agreement—no "insured" is entitled to relief here.

*Fifth*, the Clinic takes issue with no provision in the Policy akin to the severability or separation of insureds provision at issue in *Postell v. Am. Family Mut. Ins. Co.*, 823 N.W.2d 35, 45–46 (Iowa 2012). The omission constitutes *at least* a tacit admission that this Policy is not infirm to the relief the Court afforded.

*Sixth*, as has been the case throughout, Rule 59(e) does not confer a right to raise new issues. *Nordgren*, 96 F.4th at 1077 ("Rule 59(e) has a corrective purpose and as such cannot be used as a vehicle to tender new legal theories, raise arguments that could have been made prior to the issuance of judgment….").[10]

*Seventh*, notwithstanding the plain language of the Policy, or the conduct taken on behalf of the individual doctors *and* the insured entity, or the undisputed assignment of coverage rights to the Clinic, or the fact that Dr. Goodman and the Clinic were insured on the very same Policy number 600194, the prejudices are equally applicable. That is, both the presumption, and the Clinic's futile efforts to rebut the same, apply with equal force for Dr. Goodman's identical conduct (by and through the very same personal counsel, Attorney Rowley).

In sum, that policy (number 600194) is void means the Court's order cannot be construed to permit coverage to Dr. Goodman. In fact, exactly zero authority supports a finding of coverage for Dr. Goodman here. This is, once again, unnecessary litigation.

---

[10] Of course, if Dr. Goodman assigned all rights to the Clinic (which everyone agrees is the case), why would MMIC need to bring suit against Dr. Goodman? What is the justiciable controversy there? The Clinic provides nothing but speculation and last-ditch aspiration to absolve itself of its inappropriate acts taken in connection with this litigation.

## Conclusion

MMIC respectfully requests the Court deny Defendant's Motion to Alter or Amend the judgment (Doc. # 99).

**Certificate of Service**

The undersigned certifies that the foregoing instrument was served upon counsel of the parties to this action on May 8, 2025, by CM/ECF.

/s/ Adam D. Zenor

Copies to:

Nicholas C. Rowley
Dominic F. Pechota
Chayce Glienke
TRIAL LAWYERS FOR JUSTICE, PC
421 West Water St., Third Floor
PO Box 228
Decorah, IA 52101
Phone: 563.382.5061
nr@tl4j.com
dominic@tl4j.com
chayce@tl4j.com

Clinton Ehrlich (*Admitted Pro Hac Vice*)
LAW OFFICES OF CLINTON EHRLICH
120 Vantis Dr., Suite 300
Aliso Viejo, CA 92656
Phone: 818.473.5404
clint@ehrlichlaw.org

ATTORNEYS FOR OBSTETRIC AND GYNECOLOGIC ASSOCIATES OF IOWA CITY AND CORALVILLE, PC

Ryan G. Koopmans
KOOPMANS LAW GROUP, LLC
500 E. Court Ave., Suite 420
Des Moines, IA 50309
Phone: 515.978.1140
ryan@koopmansgroup.com

Robert G. Kamenec
FIEGER FIEGER KENNEY & HARRINGTON, PC
19390 W. 10 Miles Rd.
Southfield, MI 48075
Phone: 248.355.5555
r.kamenec@fiegerlaw.com

Matthew M. Patterson
BEAM LEGAL TEAM, LLC
954 W. Washington Blvd., Ste. 215
Chicago, IL 60607
Phone: 312.733.0930
mpatterson@beamlegalteam.com

ZENOR LAW FIRM, PLC

By: /s/ *Adam D. Zenor*
   Adam D. Zenor, AT0009698

By: /s/ *Derek R. LaBrie*
   Derek R. LaBrie, AT0014157

111 E. Grand Ave., Suite 400
Des Moines, IA 50309
Phone: 515.650.9005
Fax: 515.206.2654
adam@zenorlaw.com
derek@zenorlaw.com

MEISSNER TIERNEY FISHER & NICHOLS, SC

By: /s/ *Mark D. Malloy*
   Mark D. Malloy, *Pro Hac Vice*

111 E. Kilbourn Ave., 19th Floor
Milwaukee, Wisconsin 53202
Phone: 414.273.1300
Fax: 414.273.5840
mdm@mtfn.com

ATTORNEYS FOR MMIC INSURANCE, INC.

13

ATTORNEYS FOR INTERVENOR S.K.

13